Opinion by
 

 Cunningham, J.,
 

 As the result of the effort and strain incident to lifting a large piece of bone coal in the course of his employment in one of defendant’s mines on May 21, 1934, claimant suffered a bi-lateral and right femoral hernia, concededly compensable under the hernia amendment of April 13, 1927, P. L. 186, (77 PS §652) to the Workmen’s Compensation Act of June 2, 1915, P. L. 736. An operation for the correction of these hernias was performed by Dr. J. M. Snyder, a company doctor, to whom claimant was referred by his family physician, Dr. P. J. Pessalano. On July 2, 1934, Dr. Snyder discharged claimant from the hospital and reported him as able to return to work on August 6th,
 

 
 *572
 
 This was not Robert’s first experience with hernia operations. While working in a grocery store in May, 1932, he suffered a double hernia, corrected by an operation at the West Penn Hospital. His employment with the defendant company began in August, 1933.
 

 Under an open agreement for compensation for total disability, claimant was paid up to August 6, 1934; it was terminated by his final receipt, dated August 16th. With reference to the incidents following the termination of the agreement, claimant testified: “I was feel good and I want to go back to work and [doctor] gave me paper and I went to superintendent Ryan and promised find something for me, went couple times.”
 

 While claimant was waiting for an assignment to work he developed another left inguinal hernia. As the controversy in this case arose out of claimant’s contention that by reason of this subsequent development in his physical condition he again became totally disabled and was, therefore, entitled to have his compensation agreement reinstated, we quote his testimony relative to the cause of the last hernia: “Q. Then, Andy, you didn’t have anything the matter with you when you came out of the hospital and for some time after-wards until along in September 1934? A. You know, I sneeze very hard when I sneeze and that is what happened to me one day way late after I was discharged. Q. And when you sneezed is that when it happened? A. Yes, I felt a little pain inside after I was discharged; I felt pretty good until then. Q. It was this sneezing that caused this rupture then? ...... A. Yes, ,sir. ......Q. Where were you when it took place? A. On the street when it happened outside. Q. Did you feel anything when you sneezed? A. Little bit pain. Q. How long were you out of the hospital when that happened? A. About a month and a half.”
 

 On January 21, 1935, within one year after the last payment of compensation under the agreement, claim
 
 *573
 
 ant filed with the board a petition, which, although entitled a petition to set aside the final receipt, was, in effect, an application for the reinstatement, under the second paragraph of section 413, as amended April 13, 1927, P. L. 186, 77 PS §772, of the compensation agreement (terminated by the receipt) upon the ground that his disability had “recurred.” If the claimant was entitled to have the agreement reinstated under section 413, the circumstances under which the final receipt was signed become immaterial.
 

 It was conceded on both sides that the sneeze was the immediate cause of the descent of the hernia, but the issue arising under the petition and defendant’s answer thereto was whether the precipitation of the hernia constituted a “recurrence,” within the intendment of the second paragraph of section 413, of the disabling condition upon which the original agreement had been based, or amounted to a “new injury.” Counsel for claimant contended the descent of the hernia was due to a weakened condition of claimant’s left abdominal wall following the operation necessitated by the accident of May 21, 1934, for which operation the defendant company was responsible. On the other hand, the contention of counsel for defendant was that claimant had fully recovered from the operation' and that his abdominal wall was not in a weakened condition. Directing attention to the fact that the sneeze occurred when claimant was neither on the premises of the employer nor engaged in its service, it is argued that the hernia in question was not a recurrence, but a new injury for which defendant was in no way responsible.
 

 As a result of proceedings before the compensation authorities the referee made, and the board affirmed, a finding that claimant “sustained a recurrence of the hernia on account of a physical weakness as a result of his previous hernial operation and due to the sneeze,” causing total disability. August 16, 1934, was fixed as
 
 *574
 
 the date of the recurrence and the compensation agreement was reinstated as of that date, payments to continue, within the limitation of the statute, until claimant’s disability changed. For reasons hereinafter stated we think the date of recurrence and reinstatement as fixed in the order of reinstatement is not supported by the evidence. Upon the employer’s appeal to the court below, its exceptions were dismissed and judgment entered upon the agreement. We now have this appeal from that judgment.
 

 The sole question involved is whether this record contains any competent evidence sustaining the finding of the referee. We think claimant had the burden of showing that the hernia most probably would not have descended if his abdominal wall had not been in a weakened condition as a result of the operation of June 11, 1934.
 

 It therefore becomes necessary to examine the testimony upon which the referee based his conclusions. Claimant testified that when he felt the pain following the sneeze he went to Dr. Pessalano who made an examination and again sent him to Dr. Snyder. Neither Dr. Pessalano nor claimant could fix the date of this examination more accurately than to say it was about a month and a half after claimant’s discharge by Dr. Snyder. Relative to this examination, Dr. Pessalano testified: “Q. What did you discover on the examination that he came to you after he was discharged from the hospital? A. He had a recurrence of the hernia. Q. And you made an examination of him at that time? A. Yes, sir. Q. And what were your findings? A. I found that he had a recurrence of the hernia. Q. Did you have any testimony or history from the claimant as to how the hernia recurred? A. The testimony or story as I remember he told me was that he had felt some pain and noticed a swelling even before he went back to work following the operation. Q. Did you get a history thud
 
 *575
 
 he had sneezed while walking on the street? A. He said he slipped or sneezed or something to that effect.”
 

 Excerpts from his testimony on cross-examination read: “Q. We will change it — whether or not in your opinion) the hernia you found on your examination was a new injury? A. Ho, there was a recurrence of the previous. Q. Was that — would you say then whether that was caused by the condition of the operation — an aggravation of the condition left by the operation? A. Am I supposed to answer that ‘yes’ or ‘no’? Q. Whatever you want? A. Yes, in this sense, if it occurred shortly following the operation, there was a waiting period where there was a definite weakness which is not a fault in itself as to the operative work — the tissues are still knitting there and to do lifting then would produce a recurrence. (By the referee) Q. There was a weakness there? A. There always is. (By counsel for appellant) Q. Will you express an opinion doctor as to whether or not the wounds and the surrounding tissue after an operation is stronger or weaker? A. It is stronger after a period of time, after the healing process is complete then it is stronger.” Dr. Pessalano when asked whether or not in his professional opinion it is common for a person who has been operated on to still have a weakness in the abdominal wall, answered: “A. It is not common, no; it is infrequent, but you do find cases where the weakness persists. Q. Can you tell us whether or not after an operation of this type— a hernia — any slight effort on the part of the claimant would cause a recurrence? A. That is possible. Q. And if you have, as in this case, a month and a half after the man was discharged from the hospital he complained of a weakness and that he could not walk very well and that on the street he coughed and sneezed and caused recurrence would that in itself be sufficient to cause a recurrence? A. Yes, sir, it is possible.”
 

 On further cross-examination, Dr. Pessalano fixed
 
 *576
 
 the “waiting period” at from eight to fourteen weeks, “depending upon the individual case.” He frankly stated he could not say
 
 definitely
 
 whether the “healing process” had been completed in claimant’s case, or whether the hernia was a new injury due to the sneeze or was attributable to a weakened condition of the abdominal wall.
 

 Dr. Snyder, called by appellant, testified he operated upon claimant June 11, 1934, for “a bi-lateral inguinal hernia and a right femoral hernia” and that his “wounds healed firmly,” without any infection. After referring to claimant’s discharge from the hospital on July 2, 1934, and the advice given him by the witness that he could return to work on August 6th, Dr. Snyder testified he saw claimant again on September 27th and that claimant had no hernia at that time. Continuing his testimony, the witness said the next time he saw claimant was December 1, 1934; that Dr. Pessalano telephoned he had examined claimant, discovered a hernia on his left side, and was sending him to the witness; that upon claimant’s arrival he examined him and found the hernia.
 

 This testimony demonstrates the error of the referee in fixing August 16, 1934, as the date of the recurrence of disability; it was sometime between September 27th and December 1st of that year. With respect to the probable cause of the hernia then present, Dr. Snyder was of opinion claimant “did not have a weakened condition of his abdominal wall as a result of the operation,” but, accepting claimant’s history of its development, the witness said, “the sneeze was a productive factor in this hernia.”
 

 Dr. Snyder’s attitude upon the subject of recurrence seems to be summed up in this excerpt from his testimony: “Q. Did the sneezing aggravate any condition left by the operation, in your opinion? A. I think I have stated before the sneezing could produce a hernia
 
 *577
 
 either in a subject or individual who has never had a hernia in that side, a sneeze can do that, a severe cough can do that; I don’t know if there was any condition present in this man that wasn’t discoverable to me on my various examinations that was a precursor of a hernia after his operation, then I would say that anything, a sneeze or anything that would increase the abdominal pressure would have an influence on producing an abdominal hernia. Q. You don’t know any condition that could have aggravated? A. Not following or left by the operation.”
 

 Although the testimony of Dr. Pessalano is not as positive as might be desired we cannot say the finding of the referee is unsupported by competent evidence. Moreover, the referee and board were at liberty in arriving at a conclusion to take into consideration the entire course of events following the discharge of claimant from the hospital. If claimant’s present disability should become partial, or if another operation would reduce or end it, appellant has its remedy under the statute.
 

 The finding of the referee in this case brings it within the principles announced by this court in
 
 Gallagher v. Hudson Coal Co.,
 
 117 Pa. Superior Ct. 480, 178 A. 161, in which we held that the disability of the claimant in thaf case, following a fall caused by weakness and inflammation of his leg due to a prior injury to his knee for which he had received compensation under an open agreement until he signed a final receipt, “could be classed as a recurrence of disability,” and justified an award of additional compensation. The matter was again thoroughly considered by us in
 
 Marshall v. Pittsburgh,
 
 119 Pa. Superior Ct. 189, 180 A. 733, where an injury to the claimant’s knee, received' in the course of his employment, caused him to fall down a flight of stairs at his home — the fall resulting in a rupture of the bladder. Nothing can profitably be added to what
 
 *578
 
 was said in the Gallagher and Marshall cases and the cases cited in those opinions.
 
 Carey v. Wiedlandt & Co.,
 
 100 Pa. Superior Ct. 220, is also an illustration of the distinction between the prolongation or recurrence of disability and the causing of disability by a “new injury.” We are satisfied from our examination of this record that there was sufficient evidence to sustain the findings of fact made by the compensation authorities and that the law has been properly applied to the facts as found. It is necessary, however, to direct a modification of the judgment with respect to the date of reinstatement of the' agreement. The judgment reinstates it as of August 16, 1934. We have pointed out that the only evidence upon the subject is that the hernia was not in existence on September 27, 1934, but had descended prior to December 1st of that year. Section 413 provides that the reinstatement “shall be made as of the date upon which it is shown that the disability of the injured employee has ...... recurred.” If counsel for the parties cannot agree upon that date it may be necessary for the court below to return the record to the board for a specific finding relative thereto. There is no justification in this record for reinstating the agreement as of any date prior to September 27, 1934.
 

 Judgment modified and as modified affirmed.