Bush Coal Company and State Workmen's Insurance Fund, Petitioners *v.* Workmen's Compensation Appeal Board (Adams), Respondents.

Submitted on briefs September 9, 1985, to Judges ROGERS and MacPHAIL, and Senior Judge BARBIERI, sitting as a panel of three.

*Paul J. Dufallo*, Assistant Chief Counsel, for petitioners.

*Frank L. Tamulonis, Jr., Zimmerman, Lieberman & Derenzo*, for respondent, Kathleen Adams, Widow of Foster Adams, Deceased.

OPINION BY JUDGE ROGERS, October 30, 1985:

Bush Coal Company and the State Workmen's Insurance Fund have filed petitions for review of an order of the Workmen's Compensation Appeal Board affirming a referee's action granting the fatal claim petition of Kathleen Adams for compensation on account of the death of her husband.

In April 1976 the claimant's husband sustained a myocardial infarction in the course of his employment with the petitioner Bush Coal Company which was totally and permanently disabling and for which cause he received workmen's compensation.

At the referee's hearing in the present proceedings, the claimant testified concerning her husband's state of total disability for work on account of his heart ailment. She said that on the day of her husband's

death, November 18, 1980, a man named Madonna, the father of two teenage girls with whom the Adams' teenage son had been engaged in controversy on the school bus, called on the telephone, that Madonna and her husband agreed to meet at two o'clock that afternoon and that her husband left the house for this meeting shortly before two o'clock. Mr. Adams died of heart failure later that afternoon.

The claimant adduced the testimony of Dr. Richard P. Bindie who performed an autopsy upon the decedent on the afternoon of November 18, 1980 and who testified that the decedent had contusions of the face; that he had died that day as the result of arrhythmia of his heart; that the basic cause of death was severe heart disease; and that a fight was the precipitating cause of death. The doctor testified as follows:

A. The basic cause of death was hypertensive atherosclerotic coronary heart disease with a healed myocardial infarction.

Q. What role, if any, did the myocardial infarction play in the ultimate cause of Mr. Adams' death?

A. Well, that was the ultimate basic cause of death.

Q. And when you say 'the ultimate basic cause of death,' will you explain the basis for that opinion?

A. That's the underlining disease process that resulted in death.

Q. What role, if any, did the altercation with Mr. Adams—in which Mr. Adams was involved, play in the ultimate death?

A. I would consider that, in all probability, to be a precipitating factor leading to death. (Notes of Testimony, July 9, 1981, Page 21, R 19a).

* * *

Q.   Doctor, so I understand your findings, you say the basic cause of death was the infarction?

A.   Yes.

Q.   And in your opinion, the infarction was precipitated by the fist fight?

A.   No, no.   The infarction was old heart disease.   The final event that lead to death was precipitated by the fist fight.   (Notes of Testimony, July 9, 1981, Page 22, R 30a)

The referee made the following findings of fact:

10.   On November 18, 1980, Decedent collapsed during a physical confrontation with a third party which stemmed from personal reasons unrelated to his employment.

11.   After his collapse, Decedent was rushed to the Emergency Room of the Ashland State General Hospital where he was pronounced dead on arrival.

12.   Autopsy confirmed that as a result of the myocardial infarction of April 10, 1976 that the heart was enlarged and dilated and demonstrated a massive healed transmural myocardial infarction extending from near the apex of the base of the heart following the entire anterior wall and extending over the anterior septal and anterior lateral left ventricular walls with severe endocardial fibrosis of the underlying endocardium.

13.   Decedent died on November 10, 1980, the cause of death being hypertensive anterosclerotic [sic] heart disease with healed myocardial infarction, the healed myocardial infarction being the underlying disease process that resulted in death.

14. As the result of the extensive myocardial damage referable to the myocardial infarction of April 6, 1976, Decedent was functioning on a limited cardiac reserve.

15. Decedent's death on November 10, 1980, was directly related to the cardiac damage of the myocardial infarction of April 10, 1976, and was the proximate, natural, and probable result of the prior work-related myocardial infarction.

The petitioners contend that the evidence does not support the referee's findings that the decedent's death was the result of his work-related 1976 heart attack and the resultant massive healed myocardial infarction and severe endocardial fibrosis. We firmly disagree. Injuries unrelated to one's employment are compensable if they are the proximate result of prior work-related injuries. Where there is an intervening nonwork injury, the claimant must prove that the resultant death or disability was so immediately and directly connected with the prior work-related injury that it would naturally and probably result therefrom; that is to say, that the first accident was the proximate predisposing cause of the resultant disability. *GTE Sylvania v. Workmen's Compensation Appeal Board (Lydon)*, 73 Pa. Commonwealth Ct. 618, 620, 458 A.2d 1050, 1051 (1983). Dr. Bindie's testimony clearly supplies these proofs.

The recent case of *Topps Chewing Gum, Inc. v. Workmen's Compensation Appeal Board (Demich)*, 87 Pa. Commonwealth Ct. 57, 485 A.2d 1237 (1985), is pertinent. There the evidence was that the claimant's herniated disc was precipitated by a nonwork sneeze which ruptured or weakened a disc which had been weakened or damaged in a prior work-related lifting injury. After citing *GTE Sylvania* for the general rule in this class of case, which we have just repeated,

Judge ROBERT W. WILLIAMS, JR. wrote in *Topps Chewing Gum, Inc.* the following paragraph which is altogether pertinent to the matter before us.

> Dr. Malloy opined that [claimant's] sneeze, while the immediate cause of herniation, could only have ruptured a weakened or damaged disc. Dr. Malloy further testified that the two work-related lifting incidents damaged claimant's disc rendering it susceptible to herniation. Since the herniated disc would not have resulted from the sneeze absent prior work-related injuries, the referee properly found that the claimant's disability was caused by his injury of September 22, 1980. *See* Roberts v. Hillman Coal & Coke Company, 131 Pa. Superior Ct. 570, 200 A. 128 (1938) (sneeze induced recurrence of totally disabling work-related hernia ruled compensable).

*Topps Chewing Gum, Inc.*, at 59, 60, 485 A.2d at 1238. Order affirmed.

### ORDER

AND Now, this 30th day of October, 1985, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is affirmed.