## Blackwell v. Dahlstrom Metallic Door Company et al., Appellants.

94

Argued October 30, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*George H. Detweiler,* for appellants.

*James Howard Brennan,* for appellee.

Opinion by Baldrige, J., December 16, 1933:

This claimant, a structural iron worker, was injured Friday, May 15, 1931, when he slipped on a stairway and injured his back. There was no work Saturday, but he attempted to work on the succeeding Monday, and after the expiration of two hours found himself unable to continue his labors. On September 18, 1931, he signed a final receipt in the presence of his attorney. His disability continued from the date of injury until July 6th, when he went on another job. He worked steadily until January 12, 1932, when he,

with all the other men with the exception of one, was discharged as his character of work was completed. He complained to his union that as he was a "steward" of the union, he was entitled to be retained under its rule instead of the man who remained. On April 8, 1932, the claimant filed a petition for review, alleging a recurrence of his disability. The referee reinstated the agreement as of January 13, 1932. The board sustained his conclusion and the court affirmed the board.

The appellants' sole contention is that there was not sufficient competent evidence to show a causal connection between the injury and the disability.

The complainant called his family physician, Dr. Maury, who testified that on September 3, 1930, he found the claimant suffering from severe sinusitis, and in March, 1931, he saw him again when "his general condition of health wasn't very good." He did not recall, however, any complaint of back injury prior to May 15, 1931, when the claimant consulted him and informed him that he had fallen down a stairs while at work. He had the claimant X-rayed and found there was no disturbance of the vertebrae, but ascribed his pain to arthritis. After seeing the claimant regularly for some time, the claimant told the witness that "he had no more pain and he felt all right," and on September 18th the witness pronounced the injury cured. We, therefore, have the claimant, as of that date, acknowledging in writing a receipt for amount due him for all injuries received; he was not experiencing pain and his attending physician pronounced him recovered. The burden was then on the claimant to show that he was entitled to further compensation as a result of his injury on May 15, 1931: Shuler v. Midvalley Coal Co., 296 Pa. 503, 146 A. 146; Krock v. Ballard Sprague & Co. et al., 104 Pa. Superior Ct. 389, 398, 159 A. 191.

In the meantime, in August or September of 1931, the exact date being uncertain, the claimant was in an automobile accident, caused by an ice cream truck forcing him off the road, resulting in his running into a telephone pole. He injured his elbow and an infection followed, which required him to make two visits to Dr. Maury and to lose a few days from his work.

When Dr. Maury was asked whether or not the claimant's condition is connected with the fall in May, 1931, he said: "Well, I'm not sure in my own mind. I don't know whether it is or whether it isn't. It might be and it might not be. That is my honest opinion."

Dr. Steele, the other physician called upon the part of the claimant, testified that he first examined this patient on June 23, 1932; that he read the X-ray pictures which showed nothing to him except a little irritation to the lumbo sacro and sacro-iliac joints and evidence of arthritis. He was asked: "Q. From the symptoms as revealed by your examination, doctor, could you arrive at the cause of the symptoms? A. Well, together with his history and so forth, the trouble he has at the present time *could* be caused by injury." (Italics are ours.) This doctor further testified that the claimant could have had dormant arthritis, aggravated by the injury. He was also asked: "Q. From the facts as told by the claimant could you form an opinion or give an opinion? A. Well, the only opinion I could give is that he has had some secondary infection in there. There is no question about that in my mind. Whether it came from his sinus or not, I don't know. At the time I saw him I got that history from him that he had trouble with his sinuses but it entirely cleared up. Q. Would the fact that he had that sinus trouble affect the testimony you have previously given? A. No, not at all."

Dr. Steele's testimony, taken in its entirety, did not

definitely express the opinion that the injury caused the arthritis. We interpret it to mean that the condition of the claimant might be due either to a secondary infection from a sinus or to the accident, and that it was impossible for him to say which was the source. This medical testimony, under the rulings of Fink v. Sheldon Axle & Spring Co., 270 Pa. 476, 113 A. 666; McCrosson v. P. R. T. Co., 283 Pa. 492, 129 A. 568, and the numerous cases that have since followed the principle therein laid down, is clearly insufficient alone to support the board's conclusion.

There remains for consideration the question whether the lay testimony was sufficient to sustain a causal connection between the injury and the disease. The claimant was required to show that his ailment was so immediately and directly connected with the accident that it would naturally and probably result therefrom, so that it would come within the doctrine laid down in the cases of which Davis v. Davis, 80 Pa. Superior Ct. 343; Flour v. P. R. R. Co., 99 Pa. Superior Ct. 170; and Mohr v. Desimone & Sayers, 110 Pa. Superior Ct. 44, 167 A. 504, are examples. In the Davis case, the plaintiff was hit in the eye by small pieces of steel or hot scale and was continuously disabled from working. In the Flour case, the claimant's foot slipped while he was holding a tool against the bottom of a rivet being driven by another man with an air hammer, causing him to be thrown backwards and against the brake beam. He finished his work, but when he returned home he went to bed with severe pains, called a physician, and the next day he was advised to go to a hospital for treatment. Seven days after the accident, he consulted the physician of the defendant company and requested hospital treatment but could not secure it. Four days later, of his own volition, he went to the hospital with a temperature of 102 and severe pain in his lumbar region, an ab-

scess at the point of the injury was opened and drained, and later he was further operated on. In the Mohr case, the claimant slipped and fell into a ditch, sustaining an injury. He went to the Allegheny Hospital the next day. After the accident he was never able to do any manual labor, and the facts showed that the disability claimed was the natural and probable result of the injury. But the claimant was unable to bring himself within the rule of causal connection involved in] those cases.

True, the claimant said he continued to have pains, notwithstanding he signed the receipt and that they grew progressively worse. He was corroborated, in part, by a fellow workman as to his inability to do the same character of work he had done before the accident, but it is uncontradicted that the last day he worked he aided three other men in lifting a beam weighing 600 pounds. The claimant's difficulty is to trace the cause of the pain directly to the injury and to prove that it was the natural result thereof. The physicians who personally attended the claimant would not say so, and the lay testimony did not establish a direct connection between the injury and the arthritis.

We are all of the opinion that the claimant was unable to bear successfully the burden of proof imposed upon him by law.

Judgment reversed.