Marshall *v.* Pittsburgh, Appellant.

190

Argued April 24, 1935.

Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and
RHODES, JJ.

*Bennett Rodgers,* Assistant City Solicitor, with him
*Ward Bonsall,* City Solicitor, for appellant.

*I. Edward Roth,* for appellee.

OPINION BY PARKER, J., October 2, 1935:

In this workmen's compensation case, the widow of
George H. Marshall secured an award for the death of
her husband before referee and board and, on appeal to
a court of common pleas, a judgment was entered for
claimant. From that judgment an appeal was taken to
this court by defendant.

Marshall, while in the course of his employment with
the City of Pittsburgh on June 29, 1932, was thrown by
the tipping of a plank, causing a sprain of his right
knee. He was incapacitated and required the attention
of a physician who advised him to bandage the knee.
On July 11, 1932, Marshall returned to work and was
given light employment which permitted him to sit most
of the time. After this accident he walked "stiff
legged," required the assistance of a cane, and had

difficulty in getting in and out of an automobile or street car in going to and from his work. After he returned to work, the injured knee gave way on several occasions and caused him either to throw his weight on a cane or to fall to the floor. On the evening of Saturday, August 20, 1932, while in his home, he started to go down a flight of fifteen stairs to the first floor, and when at a point near the top the injured knee gave way causing him to fall to the bottom of the steps, resulting in a rupture of the bladder so that urine drained into the abdominal cavity which caused chemical peritonitis and his death on August 22nd. There was testimony that he continued to wear the bandage, changing it frequently, until after the fatal accident. The referee, affirmed by the board, found as a fact that "the primary cause of death was the injury to the deceased's knee while in the employ of the defendant on June 27, 1932."

The first contention of the appellant is that the evidence does not show a causal connection, under the Workmen's Compensation Law, between the knee injury and death, or, expressed in another way, that death was due to the second fall, while not in the course of employment with defendant, an independent cause for which the defendant was not responsible. We will assume, for the purpose of considering this purely legal question, that Marshall, while in the course of his employment with the defendant company, suffered an injury to his knee which impaired its physical condition and that, owing to the weakened condition, that knee gave way and caused him to fall down stairs, while not in the course of his employment, and suffer an injury to another part of the body which later injury, in turn, was the immediate cause of his death. By Section 301 of the Workmen's Compensation Act it is provided: "The terms 'injury' and 'personal injury' as used in this act shall be construed to mean only violence to the physical structure of the body, and such disease or infection

as naturally results therefrom; and wherever death is mentioned as a cause for compensation under this act, it shall mean only death resulting from such violence and its resultant effects." Section 306 (f) is, in part, as follows: "Should the employee die from some other cause than the injury, the liability for compensation shall cease."

"The claimant was required to show that his ailment [deceased's death] was so immediately and directly connected with the [first] accident that it would naturally and probably result therefrom": Blackwell v. Dahlstrom M. D. Co., 111 Pa. Superior Ct. 93, 97, 169 A. 394; to show that the first accident "was the proximate cause or proximate predisposing cause" of death: Davis v. Davis, Dir. Gen., 80 Pa. Superior Ct. 343, 346.

The precise question raised does not appear to have been decided by the appellate courts of this state, although in compensation cases we have had occasion to consider situations where an injury occurred for which the employer was liable and such injury rendered the injured part peculiarly susceptible to harmful effects of later accidents, and a subsequent injury occurred to the same member. In Carey v. Wiedlandt, 100 Pa. Superior Ct. 220, claimant broke his arm while in the course of his employment with the defendant company. Almost two months later he slipped on an icy pavement and injured the arm a second time. We held that claimant was entitled to compensation covering the additional injury to the same member as an aggravation of the original injury. In Gallagher v. Hudson Coal Co., 117 Pa. Superior Ct. 480, 178 A. 161, we came to a similar conclusion in the case of a knee injury. The situation here presented differs from those cases in that the second injury was here to another member. In Hornetz v. P. & R. C. & I. Co., 277 Pa. 40, 120 A. 662, an award was sustained where death was due to dilatation of the heart caused by an anaesthetic admin-

istered to perform an operation due to an injury to a finger sustained in the course of claimant's employment.

There is a strong analogy between the principles involved in proximate cause as applied to personal injury cases and causal connection in compensation cases. An examination of such tort cases throws light on the subject, although we do not mean to hold that the responsibility of an employer under the compensation law may not be more extensive than that of a defendant in a negligence case. That question, argued by the parties, can be decided when it arises. In negligence cases, "Whoever does a wrongful act is answerable for all the consequences that may ensue in the ordinary and natural course of events, though such consequences be immediately brought about by intervening causes, if such intervening causes were set in motion by the original wrongdoer": Boggs v. Jewell Tea Co., 266 Pa. 428, 433, 109 A. 666. Negligence may be the proximate cause of an injury of which it is not the sole or immediate cause: Cameron v. Citizens Traction Co., 216 Pa. 191, 194, 65 A. 534; Burrell Twp. v. Uncapher, 117 Pa. 353, 11 A. 619. "If the negligent actor is liable for an injury which impairs the physical condition of another's body, the actor is also liable for harm sustained in a subsequent accident which would not have occurred had the other's bodily efficiency not been impaired": Restatement of the Law of Torts, §460. The following comment is there added: "The rule stated in this Section applies not only when the second accident increases the harm to the member originally injured or causes the new injury to it, but also when the second accident causes harm to some other part of the other's body."

We see no reason why these principles should not be applied to a workmen's compensation case such as we are considering. We are of the opinion that the subsequent injury to the deceased was a natural result of the original injury, and it certainly cannot be said to be

improbable that one who has suffered a knee injury from which he has not fully recovered and whose physical powers are so impaired that he requires a cane in walking and where, on a number of previous occasions, his knee gave way, would not again have the same experience. We have here a situation where a rugged man received a knee injury from which he had not recovered and which disclosed the same weakness that brought about the fatal fall. Less than two months after the original accident and when he was in his own home the knee, while it was still bandaged, gave way and he fell down stairs. We recognize the fact that cases may arise where this principle would not be applicable. As expressed by Mr. Justice PAXSON in a negligence case, Hoag v. L. S. & M. S. R. Co., 85 Pa. 293, 298: "A man's responsibility for his negligence and that of his servants must end somewhere. There is a possibility of carrying an admittedly correct principle too far. It may be extended so as to reach the *reductio ad absurdum,* so far as it applies to the practical business of life." Cases may arise where the elements of time and space and intervening causes may be so involved that the second injury could not be said to be the proximate, natural, and probable result of the original accident, or the second accident may so predominate that it overshadows the original cause, but such is not the case with which we are here concerned. We are of the opinion that the evidence which we first assumed to be true would be sufficient to warrant a finding, as a matter of law, that the knee injury was the natural and a proximate cause of the death of Marshall. While compensation cases arising in other states are not a safe guide for us, owing to differing statutory provisions, the same result was reached in a number of cases: Shell Co. of Cal. v. Industrial Accident Comm., 36 Cal. 463, 172 Pac. 611; Western Lime & Cement Co. v. Bell, 194 Wis. 606, 217 N. W. 303; Cramer v. W. B. O. S. Co., 201

Mich. 500, 167 N. W. 843; In re Sponatski, 220 Mass. 526, 108 N. E. 466, L. R. A. 1916 A. 333.

It was further urged by appellant, more particularly in the oral argument, that there was not sufficient evidence to warrant a finding of fact that at the time of the second accident there was an impairment of the physical condition of the knee which would naturally cause it to give way as it is claimed it did. It must be admitted that the proofs would have been more satisfactory if Dr. Wessels, who attended the deceased at the time of the knee injury, had been called as a witness and had described more precisely the nature of such injury and then expert evidence had been given by that doctor or another as to the probability of the injury to the knee causing it to give way. Dr. Wessels was in the employ of the city and Marshall was sent to him at the time of the first accident. When a question arose at the hearing as to the nature of the knee injury, the defendant supplied a written statement of the doctor which by agreement was made part of the record and is as follows: "This is to certify that George H. Marshall, 1336 Columbus Ave., N. S. Pgh., was seen first by me on June 29, 1932, suffering with a sprain of Right Knee. He was given treatment and reported back on July 1, 5, 9, for further examination and treatment. He reported to work on July 11, 1932, and was advised to keep a tight bandage around the knee until the knee regained its former strength." Dr. Boucek, who attended Marshall after the second accident, was asked a hypothetical question which was intended to show a causal connection between the knee injury and death, but the question was so phrased and the answer was so ambiguous that it gave the fact finding body no light. We are therefore without expert testimony to establish the fact in question.

Such expert testimony, however, is not necessary where the inference is one that follows from the proven

facts "immediately and directly, or naturally and probably": McCoy v. Spriggs, 102 Pa. Superior Ct. 500, 502, 157 A. 523. "In some cases such finding may be made from the circumstances of the death or injury": Davis v. Davis, Dir. Gen., supra, p. 347. The real test for accepting such evidence is whether the finding may be made from the circumstances of the injury: Zelazny v. Seneca Coal Min. Co., 275 Pa. 397, 119 A. 487; Yodis v. P. & R. C. & I. Co., 269 Pa. 586, 113 A. 73; Zukowsky v. P. & R. C. & I. Co., 270 Pa. 118, 113 A. 62; Davis v. Davis, Dir. Gen., supra.

It was shown by a son of deceased that prior to the first accident Marshall was engaged in firing boilers; that "before June 29th he never complained and after June 29th he always complained of his right knee;" and that he never knew of his having a previous accident to that knee. It was testified by the widow that prior to the first accident deceased was very active and always worked, working double turn part of the time. There was undisputed evidence that after the accident he walked "stiff legged," limped toward the right, and required the use of a cane; that on one occasion he went to get his cane and before he could get to it fell to the floor; that he fell repeatedly and that he had difficulty in getting in and out of an automobile and street car. Such existing condition appearing, it was shown by deceased's declarations made immediately after the accident and received without objection that when at the top of a flight of steps in his home his injured knee gave way and caused him to fall to the bottom of the stairs. It would therefore appear that the giving way of the knee at the time of the fatal accident was a condition that was natural and probable, one that might occur at any time.

If the defendant had a serious doubt as to the true state of facts with relation to the injury to the knee, we may properly assume that such facts were peculiarly

within the reach of the defendant for Dr. Wessels was in the employ of the City of Pittsburgh and the defendant sent Marshall to him. The defendant saw fit to offer no evidence and depended alone upon the weakness of claimant's case. This it had a right to do as the burden of proof was on the claimant. The fact finding body, however, had the right to assume that such testimony of Dr. Wessels, if produced, would have been unfavorable to the defendant. The principle is thus expressed in Green v. Brooks, 215 Pa. 492, 496, 64 A. 672: "Where evidence which would properly be part of a case, is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory explanation, he fails to do so, the jury may draw an inference that it would be unfavorable to him. It is an inference of fact, not a presumption of law."

The statement of Judge KELLER in the case of Gallagher v. Hudson Coal Co., supra (p. 483), is apposite: "The proximate cause of the second accident was the giving way of his leg due to the weakened condition of the tissues about the kneecap, as a result of the first accident. If his leg had been sound and well it would not have given way. If he had tripped over some object and fallen, causing a new injury, this defendant would not have been liable for the resulting disability. But when the leg gave way from weakness, or inflammation, which was the result of the first fall, the disability following the fall, which resulted from this weakness or inflammation, may properly be referred back to the original injury."

The appellant laid considerable stress upon the case of Wineberg v. Dubois Boro., 209 Pa. 430, 58 A. 807, a negligence case. There a woman brought an action in trespass against the borough to recover damages for injuries to her leg caused by a fall on a defective sidewalk and it appeared that she suffered a second fall

which aggravated the injury. However, the second fall was occasioned by a slipping of the sound foot. It was held that she was not entitled to damages for such part of her injuries as resulted from the second fall. The fact that the fall was due to the slipping of the sound foot clearly distinguishes that case from the one we are considering and, in fact, that very situation was pointed out by this court in the Gallagher case when we said that if the claimant had tripped over some object and fallen causing a new injury the defendant would not have been liable for the resulting disability.

We are of the opinion that the evidence was sufficient to sustain the findings of fact and that it was not imperative that further expert testimony should be given.

Judgment affirmed.