## Wengryn, Appellant, v. Superior Steel Corporation

Argued April 14, 1943. Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

110

*Fred J. Jordan,* with him *Murray J. Jordan,* for appellant.

*P. K. Motheral,* with him *Reed, Smith, Shaw & McClay,* for appellee.

OPINION BY RENO, J., July 16, 1943:

The question for solution is: Where an injured employe, confined to a mental hospital by reason of mental derangement resulting from compensable injuries, is attacked by another inmate and dies as a result of the injuries inflicted by his assailant, are his dependents entitled to workmen's compensation?

There is no dispute about the facts. Claimant's husband was injured in the course of his employment. His head was bruised and his right leg fractured. He was taken to a hospital where he remained five weeks. When he was discharged his leg was still in a cast which caused an ulcer. He became depressed, had crying spells, pains in his head; at times he was violent and abused his wife and children. He refused to eat properly, lost control of his personal self, had long periods of melancholy, drank kerosene and one time either drank or attempted to drink mercurochrome. Almost two years after the accident he was committed to a mental health hospital. His case was there diagnosed

as chronic dementia with some brain deterioration and that condition was found to be the result of the blow upon his head, the fracture of the right leg and the ulcer. While so confined, about four months after the commitment, Wengryn was attacked by another inmate, receiving severe bodily injuries from which he died.

Promptly after the accident the employer executed a compensation agreement and payments were made thereon until the employe's death when they were discontinued. Thereafter, the widow filed a claim for compensation alleging that his death was due to his injuries. The referee found that Wengryn's mental illness was caused by the accident, that his removal to the mental hospital was directly occasioned thereby, that he died as a result of the injuries sustained at the hands of his assailant, and awarded compensation to the widow and dependents. The board affirmed the referee. The court below, holding that the attack by Wengryn's fellow inmate was an intervening and superseding cause, reversed and entered judgment for the defendant.

This case is ruled by the principles applied in *Kolyer v. Westmoreland Coal Co.,* 149 Pa. Superior Ct. 473, 27 A. 2d 272. There, the claimant had been injured in the course of his employment; his left foot was amputated; two years later, while he was walking in his back yard, with the aid of crutches, one of the crutches slipped on the grass; he fell and injured his left femur and hip. Additional compensation was refused by the compensation authorities. Judge Rhodes said, "We agree that claimant's subsequent injuries had no direct relation to the original accident. It is true that the use of crutches was made necessary because of the loss of his foot, but the new injuries were rather the result of a cause independent of the accidental injury for which defendant was obliged to pay compensation. If, while walking with his crutches, claimant had fallen over

some object, or had slipped on a defective sidewalk, certainly it could not be said that the resulting injuries and disability were the proximate, natural, and probable result of the original accident. ...... To accept claimant's theory would require us to recognize *novel and extraordinary consequences where there was an entire absence of a natural and continuous sequence between the alleged cause and the alleged effect, or where there was no direct connection between them.* ...... In the case before us the subsequent injuries were due to the slipping of the crutch on the grass where claimant chose to walk; they were not the proximate, natural, and probable result of the original injury, and in no way can the further disability be referred back to the first accidental injury." (Italics supplied). So here, as we shall presently demonstrate, the subsequent death in the mental hospital was not the proximate, natural and probable result of the original injury.

Appellant strongly relies upon *Marshall v. Pittsburgh,* 119 Pa. Superior Ct. 189, 180 A. 733, but that case is obviously not controlling. There, the decedent suffered a sprain of his right knee; two months after the accident, while his knee was still bandaged, it gave way and he fell downstairs, in his home, injured his bladder, causing peritonitis from which he died. An award was allowed, and Judge (now Mr. Justice) PARKER, speaking for this court, said, "There is a strong analogy between the principles involved in proximate cause as applied to personal injury cases and causal connection in compensation cases," and pointed to the tort rule announced in *Boggs v. Jewell Tea Co.,* 266 Pa. 428, 433, 109 A. 666, as applicable in the factual situation under consideration: "Whoever does a wrongful act is answerable for all the consequences that may ensue in the ordinary and natural course of events, though such consequences be immediately brought about by intervening causes, if such intervening causes were

set in motion by the original wrongdoer." However, later in the opinion, he carefully limited the operation of the rule and said, (page 194), "We recognize the fact that cases may arise where this principle would not be applicable. As expressed by Mr. Justice PAXSON in a negligence case, Hoag v. L. S. & M. S. R. Co., 85 Pa. 293, 298: 'A man's responsibility for his negligence and that of his servants must end somewhere. There is a possibility of carrying an admittedly correct principle too far. It may be extended so as to reach the *reductio ad absurdum*, so far as it applies to the practical business of life.' Cases may arise where the *elements of time and space and intervening causes may be so involved that the second injury could not be said to be the proximate, natural, and probable result of the original accident, or the second accident may so predominate that it overshadows the original cause* ......" (Italics supplied). The decision is founded upon the proposition that in that case death was the natural and probable result of the original injury from which the decedent had not recovered at the time of the second injury.

The Workmen's Compensation Board quoted Judge PARKER's statement in the Marshall case concerning the analogy between proximate cause and causal connection, but concluded: "In the instant case, we conclude that the accident was the natural and proximate cause of the decedent's death. It is not denied that decedent became mentally ill as a result of the accident, and that this condition necessitated his confinement in a mental institution among other mental patients. We do not agree with defendant's contention that the act of the fellow inmate was a sufficient intervening cause to break the chain of causal connection. It is common knowledge that mental patients act irrationally, and are likely to harm themselves or others. We believe that the reckless and wilful misconduct of the fellow inmate was a possibility to which decedent would be subjected, and,

therefore, cannot be deemed a sufficient intervening cause, breaking the chain of causal connection between the accident and decedent's death. The decedent was placed in a position of peril, due to his mental illness, brought about by his accident and confinement in the institution. It is evident that he was unable to guard against the misconduct of other inmates."

Appellant lays great stress upon this conclusion, but it is manifestly unsound. Mental patients do indeed act irrationally and occasionally harm one another. This case itself shows that one inmate may even kill another and, therefore, all inmates are exposed to that *possibility*. But, the test is not whether death may *possibly* result but whether it will *probably* result. "But things or results which are only possible cannot be spoken of as either probable or natural. For the latter are those things or events which are likely to happen and which for that reason should be foreseen. Things which are possible may never happen; but those which are natural or probable are those which do happen, and happen with such frequency or regularity as to become a matter of definite inference": *S. S. Pass Ry. Co. v. Trich,* 117 Pa. 390, 399, 11 A. 627. The test is whether death at the hands of a fellow inmate is so frequent and regular that it follows as a natural and probable consequence of confinement in a mental institution. We cannot agree that deaths as a result of attacks by fellow inmates are so common as to be the natural and probable consequences of confinement in mental health hospitals. If they were, no one would commit his loved ones to their care and no judge would use legal process to confine a mentally diseased person there. The logic of the realities completely refutes the argument. Nor can we agree that the decedent was placed in a position of peril when he was committed to the hospital. On the contrary, he was placed in a haven of refuge, a shelter from the rude storms which beat upon his deranged

mind, a harbor of safety, a hospital where expert and tender ministrations were intended to restore him to health. It is altogether impossible to visualize a hospital as a place of peril.

The irresistible conclusion is that the death of claimant's husband at the hands of a fellow inmate was not the direct, proximate, natural and probable result of the original injury. It was a novel and extraordinary happening with no natural and continuous sequence between injury and death and no direct connection between them. To paraphrase §306 (f) of the Workmen's Compensation Act of 1915, P. L. 736, as amended, which was in effect at the date of the decedent's original injury, the employe died "from some other cause than the injury" and, therefore, the employer's "liability for compensation shall cease."

Judgment affirmed.