## Friel, Appellant, *v.* Sun Shipbuilding & Drydock Company.

Argued October 5, 1953. Before RHODES, P. J., HIRT, RENO, ROSS, GUNTHER, WRIGHT and WOODSIDE, JJ.

*Philip Richman,* with him *Frank I. Ginsburg,* for appellant.

*J. Allen Hodge,* with him *Hodge, Hodge & Balderston,* for appellee.

OPINION BY ROSS, J., December 29, 1953:

In this workmen's compensation case claimant, James Friel, seeks compensation for the loss of the in-

dex and middle fingers of his left hand by an accident which occurred while he was in the employ of Sun Shipbuilding and Drydock Company, a self-insured employer. Compensation was awarded by the referee. The employer appealed to the Board and its appeal was sustained and the claim petition dismissed. Claimant thereupon appealed to the Court of Common Pleas of Delaware County, which affirmed the Board, and the claimant took this appeal.

The referee made, among others, the following findings of fact: "3. That on March 18, 1949 the claimant while in the employ of the defendant was struck on the head by a tube at 3 A.M., he had to go home with pains in the head. 4. That the next morning at 2 A.M. he came back to work for a dressing after which he left, and as he was crossing the railroad tracks, outside the gate, he blacked out—an engine passed by after which he was picked up and taken to a hospital. 5. That as a result of this accident the claimant sustained a loss of the index and middle fingers of the left hand." On these facts the referee, as stated above, made an award of compensation.

The Board vacated the third and fourth findings of fact of the referee and substituted the following: "THIRD: We find as a fact that, on March 17, 1949, claimant was struck on the head while acting within the course of his employment with the defendant herein, as a result of which claimant suffered a superficial laceration of the head. FOURTH: We further find as a fact that, on the morning of March 18, 1949, while claimant was on the second track of a series of tracks under the possession and control of the Pennsylvania Railroad Company, he was struck by an engine of the Pennsylvania Railroad Company which was running on the second track, as a result of which occurrence claimant sustained certain injuries which necessitated

the removal of the index and middle fingers of the left hand."

The Board found as additional facts that the tracks upon which claimant was struck were not controlled or owned by defendant and that the tracks were not "so connected with the business of the defendant as to form a component or integral part of its business". Finally, the Board found that claimant failed to establish that he sustained the injury which led to the amputation of his fingers while he was "actually engaged in the furtherance of the business or affairs of his employer or that his presence was required there by the nature of his employment". On the basis of its own findings of fact the Board concluded: "Since claimant was injured off the premises of his employer and since the testimony discloses that, at the time of the occurrence, claimant was not engaged in the furtherance of the business or affairs of his employer or that his presence was required there by the nature of his employment, he is not entitled to the payment of compensation and his claim petition must be dismissed."

Claimant concedes that the Board's conclusion would be correct if defendant's liability for compensation depended solely upon the accident which occurred on the tracks of the Pennsylvania Railroad Company. Claimant contends, however, that this later accident was but the "proximate result" of the original injury to his head, which injury is admitted to have occurred on the premises of the employer while claimant was performing his assigned work and that the injuries sustained when he was struck by the train are, therefore, compensable because they are the natural and probable consequence of the original accident.

Claimant's evidence, if accepted, would tend to show that he was, on the morning of March 17, 1949, while in the course of his employment with defendant, struck

on the head by a "jig", a piece of steel two feet square, two inches thick, weighing between 75 and 100 pounds. After being struck claimant was bothered constantly by a severe headache. On the morning of March 18, 1949, after having his head treated at the plant dispensary and after having tried unsuccessfully to collect his pay, claimant "blacked out" just before he reached the railroad tracks which he had to cross to leave defendant's plant. He regained consciousness on the railroad tracks after a train had passed over and crushed two fingers of his left hand. Claimant's medical witness expressed his opinion that the blow on the claimant's head on March 17 was the cause of his loss of consciousness on the following morning as he was crossing, or attempting to cross, the railroad tracks.

The defendant makes no attempt before this Court to support the reasoning which impelled the Board to dismiss claimant's claim petition. It tacitly agrees that claimant has correctly defined the issue by summarizing at length its own evidence tending to minimize the seriousness of the first injury, and indicating that claimant was intoxicated when he returned to the plant on March 18. Defendant's medical witness testified that he had examined claimant on March 19, 1949 and stated that the head injury was not "sufficient to cause the man to fall into unconsciousness" a day after it was sustained. It would thus appear that defendant at the hearings and now recognized the necessity of suggesting some alternative explanation for the occurrence of the second accident.

The Board failed to resolve the conflict in the testimony with respect to whether claimant did in fact "black out" before he started to cross the railroad tracks, and, if so, whether his loss of consciousness was attributable to the head injury sustained the preceding day.

In *Marshall v. Pittsburgh,* 119 Pa. Superior Ct. 189, 180 A. 733, claimant's decedent injured his right knee while in the course of his employment with the City of Pittsburgh. Nearly two months later, while in his home, the injured knee gave way, causing him to fall down a flight of stairs and suffer injuries which caused his death. The referee, affirmed by the Board, found ·as a fact that "the primary cause of death was the injury to decedent's knee while in the employ of the defendant". This Court affirmed an award of compensation to the widow of the employe, stating at page 192:· " 'The claimant was required to show that his ailment [deceased's death] was so immediately and directly connected with the [first] accident that it would naturally and probably result therefrom': Blackwell v. Dahlstrom M. D. Co., 111 Pa. Superior Ct. 93, 97, 169 A. 394; to show that the first accident 'was the proximate cause or proximate predisposing cause' of death: Davis v. Davis, Dir. Gen., 80 Pa. Superior Ct. 343, 346."

In *Kolyer v. Westmoreland Coal Co.,* 149 Pa. Superior Ct. 473, 27 A. 2d 272, cited by the learned court below· and relied upon by the defendant, claimant was accidentally injured on *August 18, 1936.* Amputation was necessary midway between the ankle and the knee of the left leg. One evening in *August 1938,* claimant went from the basement of his home into the back yard with the aid of his two crutches, and while walking one of the crutches slipped on the grass, and as a result he fell on his left side and injured his left femur and hip. He sought to hold his employer liable for additional compensation on the ground ·that the second accident was the proximate result of the first accident in which he lost his leg. The compensation authorities and the court below held against claimant and we affirmed. In the course of the *Kolyer* opinion

Judge, now President Judge RHODES distinguished the *Marshall* case, stating at pages 476-477: "In the *Marshall* case deceased had received a knee injury from which he had not recovered, and which disclosed the same weakness that brought about the fatal fall. Less than two months after the original accident, and when he was in his own home, the knee, while it was still bandaged, gave way and he fell downstairs. The giving way of the knee at the time of the fatal accident was a condition that was natural and probable, one that might occur at any time. The subsequent injury to deceased was a natural result of the original injury; the knee injury was the natural and proximate cause of the death of Marshall. To the same effect is Gallagher v. Hudson Coal Co., supra [117 Pa. Superior Ct. 480, 178 A. 161]. In the *Marshall* and *Gallagher* cases there was evidence that the leg gave way as the result of the former injury, and the compensation authorities so found. This alone distinguishes the present case from these cases. In the case before us the subsequent injuries were due to the slipping of the crutch on the grass where claimant chose to walk; they were not the proximate, natural, and probable result of the original injury, and in no way can the further disability be referred back to the first accidental injury."

We are agreed that there is in the record in the case at bar evidence which, if resolved in favor of claimant, would bring him within the doctrine of the *Marshall* case. We cannot, however, take the record and make our own determinations of the facts which we consider to be the crux of the present controversy. There is a conflict in the testimony on crucial matters which it is the province of the compensation authorities to resolve, and the record must be remanded for that purpose.

The judgment is reversed and the record is remitted to the court below with direction to remand the case to the Board for further proceedings in accordance with this opinion.