## Tate *v.* Counties Contracting, et al.

Argued December 8, 1972, before Judges CRUMLISH, JR., MENCER and BLATT, sitting as a panel of three.

*Gerald J. Haas,* for appellant.

*G. Roger Bowers,* with him *Joseph R. Thompson,* for appellees.

OPINION BY JUDGE MENCER, April 11, 1973:

These are two appeals from the decisions of the Workmen's Compensation Appeal Board (Board) affirming the dismissal by the referee of the claimants' petition for total disability benefits allegedly due Floyd Tate (decedent) during his lifetime and for death benefits allegedly due his wife and four dependent children.

The factual basis of the claims, which essentially involve two supposed falls and the subsequent death of decedent, is amply described in the Board's opinion:

"In the first [fall], claimant's decedent allegedly fell eight feet, head first, into an eight-foot deep manhole. A fellow-worker saw decedent outside the hole, turned away, and then when he turned back, saw decedent at the bottom of the hole and presumed from this that claimant's decedent fell. Claimant's decedent dis-

played minor physical evidence of a fall with apparently no injury to his head or face. The date of the fall was not definitely fixed, but apparently it happened on September 8, 1970.

"The second alleged fall was actually assumed to have taken place on October 12, 1970. The decedent was supposed to have left his home momentarily to go outside and when he returned inside, his face was bleeding and his wife (claimant here) saw on the right side of his face 'this imprint from the grass and the yard.' This minute observation by the wife-claimant perhaps is what caused her to think the decedent fell, but when she asked decedent what happened and whether he fell, his answer was 'I don't know.'

"Decedent was taken immediately to the hospital and within a few hours was operated upon for an acute subdural hematoma.[1] He later became unconscious and did not improve and finally died from the effects of the hematoma and the operation on May 12 [sic], 1971.[2]

---

[1] "Subdural hemorrhage and hematoma means bleeding into the subdural space. The subdural space is not a space normally. It is a potential space between the dural membrane and the arachnoid membrane covering the brain and spinal cord. . . . [I]f hemorrhage occurs into the subdural space, the blood is trapped and a hematoma (blood clot) is formed. This hematoma acts like a mass space-occupying lesion, causing compression of the underlying brain. Surgical intervention is required to remove the hematoma.

"Subdural hematomas have been arbitrarily classified by different authors in accordance with the severity of the bleeding and time of appearance of signs and symptoms requiring surgical intervention. All are agreed that those in which the bleeding is so severe as to produce signs and symptoms of brain compression within the first three days after a head injury should be classified as 'acute.' Some authors place the outside limit for the acute subdural hematoma as six or seven days from the time of injury." 2 Gray, *Attorneys' Textbook of Medicine* ¶¶91.40 & 91.41 (3d ed. 1970) (footnote added).

[2] A medical report in the record indicates that the decedent died at 12:40 a.m. on May 13, 1971 (footnote added).

Between the first fall and the events of October 12, 1970, decedent worked each work day but acted strangely when compared to his normal conduct, had violent headaches and some dizzy spells. *He never reported the accident of September, 1970, to his superiors or his employer, and it was not reported until his wife (claimant) reported it two weeks after his operation of October 12, 1970.*

"The medical witnesses of the parties agreed that decedent died because of the acute subdural hematoma and the operation thereupon of October 12, 1970, and that the hematoma was attributable to trauma.

"Claimant's task was to relate the acute subdural hematoma of October 12, 1970, to the fall of September 8, 1970. This she failed to do. The two medical experts of the employer said the details of the operation upon the acute subdural hematoma revealed to them that a fall of September 8, 1970 would be too remote to be a causal factor. Claimant's medical expert, Dr. Joseph Brady, who performed the operation, did testify that the fall of September, 1970 did cause the acute subdural hematoma, but his testimony on cross-examination negates this." (Emphasis added.)

The Board then concluded with the following: "The problem then was twofold: Did the fall of September 8, 1970 cause the subdural hematoma which manifested itself acutely on October 12, 1970,[3] or did the fall of September 8, 1970 create a condition in decedent that caused him to experience the trauma—whatever that trauma was—on October 12, 1970, which trauma brought about the acute subdural hematoma? The medical testimony negates the former question, and the proposition of the latter question was not proven." The Board therefore affirmed the dismissal of the claim petitions by the referee. This appeal followed.

---

[3] This theory of recovery is not pursued in these appeals. (Footnote added.)

The Supreme Court in *Lowery v. Pittsburgh Coal Co.*, 427 Pa. 576, 578-79, 235 A. 2d 805, 807 (1967), has well stated the law "with respect to the review of decisions of the board. Certainly it is the claimant's burden to prove all of the elements necessary to support an award. There is no doubt that the credibility and weight of the testimony are matters for the board to determine. Nor is the board required to accept the testimony of any witness, even though the testimony is uncontradicted. No citations of authority are required to support the proposition that the board, as the final fact-finding body, must determine whether the claimant has sustained his burden, and that the question on review is not whether the evidence would sustain the board's finding, but whether there was a capricious disregard of competent evidence."

Appellants first argue that the Board capriciously disregarded competent evidence that the fall of September 8, 1970, created a condition in the decedent that caused the trauma of October 12, 1970, which in turn caused the acute subdural hematoma which disabled the decedent and caused his death.

This argument relies on the theory that the first fall *itself* did *not* cause the hematoma. Appellants say that the first fall entailed a blow to decedent's head resulting in at least a concussion or other head injury which thereafter evidenced itself in numerous headaches, dizziness, and forgetfulness not previously experienced by the decedent. Then, on October 12, 1970, the decedent, perhaps as a result of a dizzy spell, fell and again struck his head resulting this time in the fatal acute subdural hematoma. Therefore, appellants argue, there definitely was a causal connection between the two falls.

The appellees counter that there was no evidence submitted to show what actually happened to cause the

decedent's second fall,[4] except the testimony of the decedent's wife.[5]

Appellees further argue that even if it is assumed that the deceased did suffer severe brain damage as a result of the first fall, thus causing continuing problems in the decedent, it would still be pure speculation that these problems *caused* the decedent to fall, if in fact he did fall.

*If* appellants had proved that the decedent struck his head in the first fall and thereby sustained a serious, *compensable* head injury, *if* the decedent had promptly reported his first fall to his superiors or employer, *if* the decedent had promptly sought medical care after the first fall to confirm a head injury, *if* the decedent's unusual behavior had been definitely attributed to that injury (thus excluding the possibility of some other causal condition), *if* the decedent had mentioned his headaches and dizziness to hospital authorities on two other occasions between the two falls when he then sought medical care for an unrelated illness, *if* someone

---

[4] As stated in the appellees' brief, p. 4: "Not only is there no evidence that the deceased fell, but there is absolutely no evidence what happened to the deceased while he was out of the house. We do not know if the deceased slipped, stumbled or tripped. We do not know whether he stepped into a hole, fell down the outside concrete steps, stepped on a loose object and fell, fell because of a defect in the area or twisted his ankle and fell. We do not know whether he was hit by a car, struck by a falling object or whether he was assaulted by a third party."

[5] "Floyd got up just around this time and went out the back I assume to get tools, but I don't know for what. While I was waiting at the dining room table for my mother to come downstairs, my little boy came in and said, 'Mommy, Daddy's in the kitchen, and he's all full of blood.' I jumped up from the table, and I went in. He was standing back up against the kitchen sink. On his left side the bottom lip was extended about an inch or an inch and a half. On his right side of his face was this imprint from the grass and the yard, and a small mark here. I got a wet washrag, and I washed his face. * * * I asked him what happened, and he said, 'I don't know.' I said, 'Did you fall?' He said, 'I don't know.'"

had observed the decedent suffer a dizzy spell or blackout and fall (thus establishing a reasonable probability that the same thing happened on October 12)—if, in fact, any one of these had been proved—we would perhaps be inclined to agree that claimants had carried their burden of proof. As the record now stands, however, these cases are controlled by that series of cases including *Gower v. Mackes,* 184 Pa. Superior Ct. 41, 132 A. 2d 880 (1957); *McAvoy v. Roberts & Mander Stove Co.,* 173 Pa. Superior Ct. 516, 98 A. 2d 231 (1953); *Marshall v. Pittsburgh,* 119 Pa. Superior Ct. 189, 180 A. 733 (1935); and *Gallagher v. Hudson Coal Co.,* 117 Pa. Superior Ct. 480, 178 A. 161 (1935). In those cases an existing accidental injury was the proximate cause of a subsequent accident, and the courts held that an employer obligated for a disability arising from the first injury is also responsible for any disability arising from subsequent accidents causally related to the first.

Here there has been an attempt to relate the cause of the second "accident" to a disability arising from the first "accident." There is no conclusive evidence, however, that any compensable first accident occurred for which the employer was obligated. Nor is there conclusive evidence of any second accident which could be causally related to the first one. We therefore must affirm the referee and the Board.

We do not think it necessary to remand these cases to the Board for a more complete explication of its reasons for dismissing the appeals. From an examination of the record, it is sufficiently clear that the claimants failed to prove that a compensable first fall took place which in turn created, in the Board's words, "a condition in decedent that caused him to experience the trauma—*whatever that trauma was*—on October 12, 1970, which trauma brought about the acute subdural hematoma." (Emphasis added.)

Affirmed.