Stanley Trumpikas, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued February 8, 1980, before Judges WILKIN-SON, JR., MENCER and CRAIG, sitting as a panel of three.

*Frank J. Muraca,* with him *Joseph R. Solfanelli,* of *Dolphin, Solfanelli & Butler,* for petitioner.

*Robert E. Kelly,* Deputy Attorney General, with him *Norman J. Watkins,* Deputy Attorney General, and *Edward G. Biester, Jr.,* Attorney General, for respondent.

OPINION BY JUDGE CRAIG, March 17, 1980:

This is an appeal from an adjudication and order of the Hearing and Appeals Unit of the Department of Public Welfare (DPW) denying the claim of petitioner, as a DPW employee, under the Act of December 8, 1959, P.L. 1718, *as amended* (Act 534), 61 P.S. §951, which provides, inter alia, that any employee of a state mental hospital "who is injured during the course of his employment by an act of any inmate or any person confined in such institution" shall be paid full salary throughout the "disability arising therefrom", together with medical and hospital expenses.

The question presented is whether the employee claimant is entitled to benefits for a secondary injury claimed to be causally related to an initial injury which, all agree, was inflicted by a mental hospital patient.

We summarize the facts as found by the DPW hearing examiner, noting in parentheses additional evidence from the record brought to our attention by claimant's counsel.

Claimant, age 59, with 19 years of employment (and a good attendance record) as a psychiatric aide at Clarks Summit State Hospital, was attacked at work on the morning of July 1, 1977 by a patient who suddenly and without warning punched him in the face with both hands, causing claimant to fall backwards and land on his buttocks. Claimant got up off the floor (with help) after several attempts and assisted other aides in subduing the patient. Claimant (immediately feeling pain in the spine, the lower body and the back of his neck) visited Dr. DeLa Cruz, the doctor on duty, who treated him for a puffy lip (and prescribed Valium, which claimant declined because he was on other medication at the time). A registered nurse at the institution, who had observed the incident, completed a form noting that claimant complained of pain in his left knee area and swelling on the left side of his face, in the upper lip area. (Claimant's additional testimony was that he complained of a sore back and hip, and the nurse remembers his complaint of being shaken up and feeling "sore all over.")

Claimant's symptoms worsened as July 1 progressed; he had difficulty getting out of his car when he returned home. (Claimant was unable to eat dinner that evening, and his wife noted changes in skin color and swelling.)

On July 2 claimant had difficulty arising because of pain on the entire left side of his body from the neck down; he limped the rest of that day.

On Sunday, July 3, claimant, still limping, managed to walk three blocks each way to church; he also attempted to weed his garden but had discomfort when bending over. Claimant did not seek out a physician further on July 3 (because it was a holiday weekend).

On Monday, July 4, the holiday, claimant, after arising, walked with a limp and, mounting a four-foot ladder, attached a four-by-six-foot flag to his porch (there was testimony that he appeared to be in pain). After lunch he drove two miles to a holiday cookout, where he ate and also drank approximately eight cans of beer.

Upon returning home, claimant again placed the ladder and mounted it to take down the flag. From the second step of the ladder, he stretched to remove the flag partially, then moved the ladder, remounted it and leaned sideways to remove the last attachment. He felt "something like dislocated in the hip or something. It just triggered out something," and thereupon he fell from the ladder over the porch banister, approximately eight feet to the ground.

After emergency treatment and hospitalization, his condition was diagnosed as paraplegia secondary to T4 compression fracture, and odontoid fracture.

Claimant's medical evidence consisted of a certificate of Dr. Black dated August 2, 1977, stating the above diagnosis, that claimant has been disabled from working and that the prognosis is unknown.

In seeking to support the DPW denial of benefits after administrative appeal, DPW counsel contends (1) as a matter of law, that Act 534 does not cover a disability resulting immediately from an injury which is secondary and not directly the injury inflicted by the inmate, and (2) as a matter of fact, that claimant has nevertheless failed to establish a causal relationship between the injury admittedly inflicted by the in-

mate and the subsequent injury which produced the serious disability.

As to the first question, the terms of the Act cover, as briefly quoted above, an employee "injured during the course of his employment by an act" of an inmate and provides benefits for the "disability arising therefrom." Arguably, if an inmate-inflicted injury is a substantial factor in the causation of a secondary injury which produces a disability, the disability would be one "arising from" the injury suffered in the course of employment. Worker's compensation decisions, although not directly governing, provide an analogy on the point. *See Workmen's Compensation Appeal Board v. Burke-Parsons Bowlby Corp.*, 25 Pa. Commonwealth Ct. 498, 499 n. 1, 359 A.2d 855, 856 n. 1 (1976), and cases cited therein.

We therefore turn to the question of whether claimant's evidence has established the essential causation link between the job injury and the secondary injury. Resorting again to worker's compensation cases for guidance—lacking precedents under Act 534 —we have the reasonable principle that "unequivocal medical evidence, not based on mere possibilities" must be produced by claimant to establish the relationship "where no obvious causal relationship exists." *Heffer v. GAF Corp.*, 29 Pa. Commonwealth Ct. 365, 366, 370 A.2d 1254, 1255 (1977); *Montgomery Mills Co. v. Workmen's Compensation Board of Appeal*, 26 Pa. Commonwealth Ct. 471, 473, 364 A.2d 508, 509 (1976).

Plainly, claimant has presented no medical evidence connecting the job injury and the secondary injury causally, by expert opinion or otherwise. Claimant has relied wholly on the view that the facts here make the causal connection obvious.

DPW's counter-argument essentially is that the disabling fall on July 4 could have resulted from a wholly independent loss of balance or position just as

much as it could have resulted from bodily weakening attributable to the job injury of three days before. *See Kolyer v. Westmoreland Coal Co.,* 149 Pa. Superior Ct. 473, 27 A.2d 272 (1942) (no proof that claimant's slipping, while on crutches, was result of intial accident).

Claimant's counsel emphasizes that claimant's own testimony, relating his fall to his pre-injured condition, stands uncontradicted by the Commonwealth and therefore must be determinative of causation. Claimant's chief reliance is upon *Morgan v. Giant Markets, Inc.,* 483 Pa. 421, 397 A.2d 415 (1979), where the Supreme Court upheld the findings of the Workmen's Compensation Appeal Board and referee that the requisite causal connection between an incident and injury was established solely by testimony of the employee, who related that his back gave way and that he experienced pain at the moment of pushing a load out of a truck. In *Morgan,* the Supreme Court, noting that it is for the trier of fact to determine the credibility of the claimant's testimony in such a situation, reached a conclusion awarding benefits because the decision of the board and referee indicated acceptance of the credibility of the testimony. *See also Gower v. Mackes,* 184 Pa. Superior Ct. 41, 132 A.2d 880 (1957) and *Marshall v. Pittsburgh,* 119 Pa. Superior Ct. 189, 180 A. 733 (1935).

Here, we note that the hearing examiner's Finding No. 14, dealing with the crucial testimony at the critical moment, can be read as crediting claimant with credibility as to his internal feelings because the finding does state that claimant *felt* sensations and then uses quotation marks only around the description of the sensations; hence the finding affirms that claimant did experience some subjective sensations just before he fell and is not a mere report that claimant so testified.

However, the chief thrust of the hearing examiner's decision is that medical evidence remains necessary to establish the connection despite claimant's believable testimony. We agree. *See Parks v. Winkler,* 199 Pa. Superior Ct. 224, 184 A.2d 124 (1962); and *Friel v. Sun Shipbuilding & Drydock Co.,* 174 Pa. Superior Ct. 320, 101 A.2d 171 (1953).

Claimant's fall from his porch was not an accident on the job as was the back injury in *Morgan;* even if claimant's fall was related to the sensations he felt as he removed his flag, evidence is needed to connect those sensations with the earlier job accident. Because the ultimate disabling injury here did not immediately and directly follow the job accident, that connection is one which cannot be deemed obvious.

The decision must therefore be affirmed.

### ORDER

AND Now, this 17th day of March, 1980, the order of the Department of Public Welfare dated February 2, 1979, is hereby affirmed.

President Judge BOWMAN did not participate in the decision in this case.