Monte Brewer, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare and Pennhurst Center, Respondents.

Argued September 14, 1981, before Judges MENCER, ROGERS and WILLIAMS, JR., sitting as a panel of three.

*Marc Jacobs,* with him *E. Lawrence Hannaway, Galfand, Berger, Senesky, Lurie & March,* for petitioner.

*John T. Kalita, Jr.,* Deputy Attorney General, with him *John O. J. Shellenberger,* Deputy Attorney General, and *Harvey Bartle, III,* Acting Attorney General, for respondents.

OPINION BY JUDGE ROGERS, December 9, 1981:

Monte Brewer appeals from an order of the Hearing and Appeal Unit of the Department of Public Welfare (DPW) rejecting the recommendation of a hearing examiner and discontinuing petitioner's Act 534[1] benefits.

The hearing exeaminer found and our review of the record shows that on May 8, 1978, Mr. Brewer, while engaged in the performance of his duties as a mental retardation aide at the Pennhurst State School and Hospital and specifically while attempting to remove leg restraints from a Pennhurst inmate, was injured when the inmate struck him in the right arm. The medical certificates of treating physicians made a part of the record before the hearing examiner indicate that a Dr. S. J. Pietrandrea examined and treated Mr. Brewer on some fifteen occasions between May 11,

---

[1] Section 1 of the Act of December 8, 1959, P.L. 1718, *as amended,* 61 P.S. §951 supplementing the benefits authorized by The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §1 *et seq.*

1978, and October 25, 1978, that his condition was initially diagnosed as a "severe ligamentous strain" and later as "post-traumatic synovitis," that the injured arm was placed first in a plaster cast and later in a functional splint and that on October 25, 1978, Dr. Pietrandrea referred Mr. Brewer to an orthopedic specialist for blood tests and further diagnosis and treatment.

On March 8, 1979, Mr. Brewer was examined by a Dr. Richard P. Whittaker at which time he was still suffering from severe pain in the right wrist and forearm and a plaster cast was again applied. Five days later, on March 13, 1979, an examination was performed by Dr. Daniel J. Gross at the request of the DPW but Dr. Gross was unable to arrive at any diagnosis because the plaster cast had not been removed. A medical certificate of Dr. Andrew R. Bolmann who also treated Mr. Brewer, dated May 3, 1979, catalogues Mr. Brewer's medical symptoms as of that date as "withdrawal, paranoid ideation, inability to get along with people, pain in right forearm and wrist—has cast on right forearm" and presents the following diagnosis: "schizophrenia, paranoid type," "traumatic arthritis right wrist."

By memorandum dated May 31, 1979, Pennhurst was informed of the decision of the DPW's Office of Manpower to

[t]erminate benefits of Act 534 for subject employee effective on receipt of this memorandum. The file of Mr. Brewer has been reviewed along with Dr. Bolmann's report dated May 3, 1979. The right wrist injury has ceased to be the cause of disability.

As previously indicated, Mr. Brewer appealed from this determination and a hearing was held on August 10, 1979, culminating in a recommendation by the hearing examiner that Act 534 benefits be restored and

that the [DPW] submit a list of light duty assignments to appellant, and his physician to realistically evaluate appellant's ability to return to work.

On the issue of disability on the date of benefit termination the hearing examiner concluded:

> Appellant has presented overwhelming medical documentation from Dr. Bolmann that he was unable to work on June 6, 1979.

Explicit reference is made by the hearing examiner to a letter of Dr. Bolmann dated July 18, 1979 and admitted into evidence in which it is stated:

> [Monte Brewer] has continued to be treated on an outpatient basis since this last hospital admission. He worried a great deal about work and was very anxious that he might be hurt again. The constant pain in his right wrist and forearm was a constant reminder of the danger awaiting him once he returned to work at Pennhurst. For a long time his arm was in a cast and this finally was removed. Monte still complains of pain and swelling in the right arm. The main problem remains is his psychiatric condition which is such that he is unable to return to work. He continues to be on medication. . . . He is seen in the office once a week. I feel that his psychiatric condition is related to the physical trauma that he received at Pennhurst. His prognosis is fair.

This lengthy factual recitation is made necessary by the absence of any factual findings or discussion by the Hearing and Appeals Unit which simply rejected the hearing examiner's recommendation and concluded:

> It is apparent from review of the record that the evidence is insufficient to establish a causal

relationship between the injury received on May 8, 1978, and the appellant's present disability.

On the contrary, all of the medical evidence is to the effect that Mr. Brewer suffered an injury to his arm at the hands of a Pennhurst inmate and that, as of July 18, 1979, he continued to experience pain in and swelling of the arm.[2] While it is evidently Dr. Bolmann's opinion that Mr. Brewer also suffers from a psychiatric condition causally related to the incident and that this psychiatric condition poses a greater threat to his patient's well being than the "traumatic arthritis-right wrist," there is no support at all in this record for the conclusion that Mr. Brewer's disability related to his arm has ceased. Since it was the DPW's burden to show the cessation of work-related disa-

---

[2] When questioned on this point at the hearing Mr. Brewer testified:

Q How is your arm today?

A It's still bothine [sic] me a lot.

Q Would you describe the discomfort.

A Well, it aches constantly still, when I try to use it. It bothers me a whole lot.

Q Can you use it around the house at all?

A Not really, no.

Q What about driving?

A It bothers me driving.

Q What about when you work in the yard or in the garden? Do you use it for that?

A. Not too much. Not unless I have to. If a door slams on me, I have to put it up or something.

. . . .

Q How do you feel about coming back to work? What if you had to come back to work Monday to the same job? How would that make you feel?

A I don't think I could do it.

Q Why not?

A I can't hold up to it.

Q You mean because of your nerves?

A Yes, and my arm still bothers me.

bility, the order of the Hearing and Appeals Unit must be reversed.[3]

In the light of our disposition of the case we need not address the issue raised by the parties in their briefs as to whether the evidence of Dr. Bolmann was adequate to establish a causal connection between the incident at Pennhurst and Mr. Brewer's present psychiatric condition.

Order reversed.

ORDER

AND Now, this 9th day of December, 1981, the order of the Department of Public Welfare's Hearing and Appeals Unit, in the appeal of Monte Brewer, dated November 28, 1979, is reversed.

---

[3] To the extent that *Boughter v. Department of Public Welfare,* 55 Pa. Commonwealth Ct. 521, 423 A.2d 806 (1980) places the burden of persuasion in cases where it is proposed to terminate existing Act 534 benefits on the claimant, it is overruled. The authority relied on in *Boughter, Kania v. Department of Public Welfare,* 49 Pa. Commonwealth Ct. 136, 410 A.2d 939 (1980), was on claimant's appeal from an initial determination by the DPW of ineligibility and we properly held that the burden was on the claimant by analogy to workmen's compensation law. With that proposition we have no quarrel. However, in *Boughter* as in the case at bar, the DPW, following an inquiry, granted benefits and the order appealed from is one terminating benefits. In similar workmen's compensation cases, where an employer seeks to terminate existing benefits the burden is on the employer to show that the claimant's disability has ceased. *Cox v. Workmen's Compensation Appeal Board,* 60 Pa. Commonwealth Ct. 59, 430 A.2d 1009 (1981).