550 A.2d 590

Ralph T. Hardiman, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Woodville State Hospital, Respondent.

Argued May 23, 1988, before Judges CRAIG and McGINLEY, and Senior Judge NARICK, sitting as a panel of three.

*David W. Costello,* with him, *Clark A. Mitchell, Mitchell & Mitchell,* for petitioner.

*James S. Marshall,* Assistant Counsel, for respondent, Department of Public Welfare.

OPINION BY JUDGE CRAIG, November 14, 1988:

Claimant Ralph T. Hardiman petitions for review of an action of the Department of Public Welfare (DPW) that he characterizes as a termination of his disability benefits under the Act of December 8, 1959, P.L. 1718, *as amended*, 61 P.S. §§951 and 952 (Act 534), without a hearing. DPW contends that the case involves not a termination but rather an *initial denial* of these benefits, on the ground that Mr. Hardiman had not fulfilled the requirements of DPW's procedures for awarding Act 534 benefits.

This case presents the issue of whether DPW's requirement that a claimant for Act 534 benefits first obtain a favorable workers' compensation decision before receiving Act 534 benefits is consistent with the intent of Act 534.

Because no hearing has yet been held in this matter, no facts have yet been found. Mr. Hardiman alleges that on July 15, 1987, when he was employed as a psychiatric aide at Woodville State Hospital, he was injured when a patient struck him on the left side of his face while he was taking a patient census. Mr. Hardiman reported the incident to his supervisor, and together they completed a Form STD-344, "Employer's Report of Occupational Injury or Disease."

As a result of his injury, Mr. Hardiman was unable to work; however, for almost three months the department paid him an amount equal to his regular salary. A doctor examined Mr. Hardiman several times, and Mr. Hardiman authorized the release of medical information to his employer. By letter dated October 7, 1987, the Director of Personnel of the Woodville State Hospital informed Mr. Hardiman that his Act 534 benefits had been suspended pending a final decision on his workers' compensation claim, and that he had been placed on "Leave Without Pay With Benefits" effective October 6,

1987. At that point Mr. Hardiman had not filed a workers' compensation claim.

Mr. Hardiman filed a claim for workers' compensation on October 14, 1987. On October 15, Mr. Hardiman's attorney wrote to the Benefits Coordinator of DPW in Harrisburg asserting that the suspension of Mr. Hardiman's Act 534 benefits without a hearing violated his client's right to due process of law, and requesting that DPW reinstate those benefits.

By letter dated October 29, 1987, DPW's Employee Services Coordinator responded to Mr. Hardiman's attorney stating (1) that DPW's position was that Act 534 benefits can be paid only if and when it had been established that an employee's injury was work-related, (2) that whether an injury was work-related was a matter to be determined under the Workmen's Compensation Act and was not within DPW's scope of authority, and (3) that if, after a determination by the State Workmen's Insurance Fund (SWIF) that an employee was eligible for workers' compensation, DPW were to determine that Act 534 benefits were due because of the circumstances of the work-related injury, then DPW would pay Act 534 benefits retroactively. The letter stated further that there was no lack of due process because a determination of Act 534 benefits could not be made while the "primary benefit" was uncertain, and that a consideration of Act 534 at this stage was premature. Mr. Hardiman received a letter from the Director of Personnel at Woodville State Hospital, dated November 2, 1987, informing him that her letter of October 7, 1987, had been in error: "No ACT 534 benefits were suspended since no ACT 534 benefits had been awarded."

Mr. Hardiman filed a petition for review in our orginal jurisdiction and a motion for peremptory mandamus on October 27, 1987. By order of November 20,

1987, this court denied DPW's motion to strike the claimant's petition and motion, noting that the petition appeared to be addressed to our appellate jurisdiction and scheduling a hearing on the mandamus motion. Because Mr. Hardiman returned to work on November 11, 1987, he has stated in his brief that his need for special relief in the form of peremptory mandamus has been rendered moot.

## Act 534

Act 534 provides in pertinent part:

Any employe of a State penal or correctional institution under the Bureau of Correction of the Department of Justice and any employe of a State mental hospital or Youth Development Center under the Department of Public Welfare, who is injured during the course of his employment by an act of any inmate or any person confined in such institution or by any person who has been committed to such institution by any court of the Commonwealth of Pennsylvania or by any provision of the 'Mental Health Act' . . . *shall be paid, by the Commonwealth of Pennsylvania, his full salary,* until the disability arising therefrom no longer prevents his return as an employe of such department, board or institution at a salary equal to that earned by him at the time of his injury.

All medical and hospital expenses incurred in connection with any such injury shall be paid by the Commonwealth of Pennsylvania until the disability arising from such injury no longer prevents his return as an employe of such department, board or institution at a salary equal to that earned by him at the time of his injury.

During the time salary for such disability shall be paid by the Commonwealth of Pennsylvania any workmen's compensation received or collected for such period shall be turned over to the Commonwealth and paid into the General Fund, and if such payment shall not be so made, the amount so due to the Commonwealth shall be deducted from any salary then or thereafter becoming due and owing. (Emphasis added.)[1]

DPW begins its argument with the unexceptionable proposition that an applicant for Act 534 benefits bears the burden of proving initial eligibility for those benefits, and that the applicant therefore must persuade some person or tribunal of his eligibility.

DPW's next point raises the general issue in this case. In the Summary of Argument in its brief, DPW states:

The Department's practice of not granting Act 534 benefits prior to *a decision by the Workmen's Compensation Board* does not violate law because the denial of Workmen's Compensation benefits is dispositive of the question of eligibility for Act 534 benefits. (Emphasis added.)

DPW's position in this case is puzzling because the departmental "practice" is embodied in DPW Personnel Manual section 7155, "Disability Leave Program," which has been made a part of the record in this case by agreement of the parties. Nowhere does that policy

---

[1] The act of December 8, 1959, P.L. 1718, known as Act 632, originally related to "employes of State penal and correctional institutions." By the Act of September 2, 1961, P.L. 1224, Act 534, the legislature broadened the original act to include certain employees of the Department of Public Welfare and of county boards of assistance. Thus, benefits under 61 P.S. §951 may be either Act 632 benefits or Act 534 benefits, depending on the nature of the claimant.

require an injured employee to file a claim, as such, with the Workmen's Compensation Appeal Board. It requires the employee only to file report forms and, as requested, additional information with departmental offices. It requires DPW's local personnel office to file forms, not with the Workmen's Compensation Appeal Board, but with the State Workmen's Insurance Fund (pp. 3, 4). That personnel office is also to forward certain forms to the Bureau of Workers' Compensation (p. 5). The document then provides that SWIF shall review the forms and either approve or deny "workmen's compensation" (p. 5). DPW's form for an Act 534 Denial Letter (Attachment V, section 7155.4, p. 1) does not mention the Workmen's Compensation Appeal Board or any requirement of pursuing a claim with that board; it states that the injury claim would be reviewed by a DPW review committee and provides that the employee has a right to appeal to the department's Hearing and Appeals Unit, with no mention of filing a claim with the Workmen's Compensation Appeal Board.

Finally, a letter of October 29, 1987, from Mr. Radel of DPW to the employee's attorney, referred to being "found eligible for workers' compensation by the State Workmen's Insurance Fund or on appeal . . . ." There was no express mention of formal workers' compensation proceedings before a referee and the board.

DPW's procedures appear to require the *department's* offices to refer injuries to SWIF, without any requirement that the employee proceed with SWIF, with the Bureau of Workers' Compensation or with the Workmen's Compensation Appeal Board and its machinery.

However, this court is apparently required to answer DPW's position as DPW has posed it in its Summary of Argument, quoted above.

DPW's general approach to the relationship between workers' compensation and Act 534 is illustrated by the beginning provisions of section 7155.2:

**A.   General**

*Workmen's Compensation is the primary benefit program under the Disability Leave Program.*

. . . .

*Act 534 of 1951, P.L. 1224 supplements Worker's Compensation* for eligible Department employees who are injured by certain persons at Department facilities or while performing fire fighting duties as a volunteer or assigned to a fire fighting unit.

. . . .

**C.   Eligibility**

. . . .

3.   Eligibility for Act 534

All employees *determined eligible for Workmen's Compensation by SWIF* who meet the following requirements are eligible to receive benefits under Act 534 supplemental program;

A.   any employee of a mental hospital, mental retardation center and youth development center (not including youth forestry camps), who is injured by an act of a patient, resident, student. (Emphasis added.)

*Analysis*

In applying section 7155 of its Personnel Manual, DPW takes the fact that Act 534 is "supplemental" to workers' compensation benefits as a practical matter—because Act 534 provides for benefits beyond those available under workers' compensation alone—and thereby attempts to transform that substantive relationship into a *procedurally* supplemental relationship by claiming that a claimant must first secure a favorable

ruling on a workers' compensation claim before the claimant may apply for Act 534 benefits. The statute itself, as quoted above, contains no such requirement. Therefore, the pivotal issue in this case is whether DPW has any legal authority to accomplish such a change. If there is none, then DPW has legislated impermissibly.

The claimant argues in his reply brief that the disability benefit programs established by the legislature under Act 534 and workers' compensation are "concurrent" rather than existing in the primary-supplemental relationship described by DPW in its manual. Further, the claimant contends that the legislature intended that DPW adjudicate claims for Act 534 benefits, and that DPW may not delegate that duty to another agency without authority to do so from the legislature.

DPW's contention that it lacks jurisdiction to adjudicate all aspects of an Act 534 claim is contrary to the precedents of this court. Beginning with *Krug v. Department of Public Welfare,* 9 Pa. Commonwealth Ct. 563, 308 A.2d 168 (1973), this court has reviewed several cases involving initial adjudications by DPW of claims for Act 534 benefits.[2] Although no issue of DPW's lack of jurisdiction was raised in those cases, the pattern of this court's tacit approval of DPW's power to

_____

[2] *See, e.g., Kania v. Ebensburg State School and Hospital,* 49 Pa. Commonwealth Ct. 136, 410 A.2d 939 (1980) (hearing before DPW hearing examiner); *Trumpikas v. Department of Public Welfare,* 50 Pa. Commonwealth Ct. 130, 412 A.2d 218 (1980) (adjudication by Hearing and Appeals Unit of DPW); *Spehar v. Department of Public Welfare,* 67 Pa. Commonwealth Ct. 310, 447 A.2d 333 (1982) (adjudication by hearing officer of DPW after initial denial of the claim by the employer hospital); *Lightcap v. Department of Public Welfare,* 107 Pa. Commonwealth Ct. 98, 527 A.2d 1087 (1987) (adjudication by hearing officer of Hearing and Appeals Unit of DPW after initial denial of claim).

adjudicate such a claim without outside assistance leads us to conclude that DPW's assertion of lack of jurisdiction is in error.

In *Schanz v. Bureau of Correction,* 52 Pa. Commonwealth Ct. 300, 415 A.2d 978 (1980), a state corrections officer appealed to this court from the action of the Bureau of Correction in terminating his Act 632 benefits. The bureau argued that this court lacked jurisdiction because no "adjudication" had taken place. Based on our previous tacit approval of jurisdiction in the Department of Public Welfare to hear Act 534 claims, which we noted was consistent with written Bureau of Correction procedures expressly asserting the power to make decisions under Act 632, we concluded that the bureau had jurisdiction to adjudicate an Act 632 claim and that the bureau had exercised that power by terminating benefits, thereby establishing jurisdiction in this court to review the agency's adjudication. The present case is different from *Schanz* chiefly in that DPW's written procedures, section 7155, assert a lack of jurisdiction over an Act 534 claim until the workers' compensation claim has been determined. Nevertheless, our conclusion in *Schanz* was based on previous decisions of this court, not on the agency's written procedures. The fact that DPW has now written something contrary into its Personnel Manual does not affect our holding in *Schanz*. Therefore, the major changes in DPW's procedures for considering Act 534 claims accomplished by the release of the new version of section 7155 were not mandated by this court's interpretation of that act.

To say that nothing compelled DPW to change its Act 534 procedures leaves open the question of whether it could choose to do so. To determine that issue we must examine the statute itself, in the light of the standard aids to construction.

We note first that Act 534 characterizes the payments to be made under it as "salary," but that it refers to other benefits to which the injured employee might be entitled as "compensation."[3] Further, Act 534 provides for the payment of "full salary" by the Commonwealth of Pennsylvania. Workers' compensation payments for state employees, of course, are not paid as salary, and they are generally limited to two-thirds of the employee's wages. Section 306(a) of the Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §511. These substantive differences between the two benefit programs support to some extent the claimant's characterization of them as concurrent rather than having a primary and supplemental relationship.

More significantly, Act 534 establishes a right of subrogation on the part of the Commonwealth in regard to "any workmen's compensation received or collected" by the employee during the period when salary is being paid under Act 534. Although this language is not necessarily incompatible with DPW's prescribed procedures, it is more consistent with the interpretation that Act 534 benefits are to be determined independently, and then, to avoid stacking of benefits, the legislature has provided means for the state to recover separate workers' compensation benefits that the employee might receive for the same period of disability.

As for the overall intent of the legislature in enacting Act 534, this court has commented previously that "Act 534 was designed to assure those who undertake em-

---

[3] *Compare Kurtz v. City of Erie,* 389 Pa. 557, 561, 133 A.2d 172, 174 (1957), where the Supreme Court, construing the nearly-identical payment provisions of the Heart and Lung Act, Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. §637, an act having a similar effect to Act 534, said, "It is significant that this statute provided for the payment of 'salary', rather than 'compensation' to the policemen or firemen."

ployment in certain state institutions that they would be fully compensated in the event they were disabled as the result of an act of a patient." *Lightcap v. Department of Public Welfare,* 107 Pa. Commonwealth Ct. 98, 103, 527 A.2d 1087, 1089 (1987) (citing *Krug v. Department of Public Welfare,* 9 Pa. Commonwealth Ct. 563, 308 A.2d 168 (1973)).

Although there is nothing in the legislative history to guide us, we may conclude from the nature of the institutions covered by Act 534 (state mental hospitals and youth development centers) as well as from the nature of the institutions originally covered under Act 632 (state penal and correctional institutions) that the reason for providing such assurance was that the legislature regarded working in those places as being more dangerous than most other forms of state employment. By making assurances of continued payment of "full salary" by the Commonwealth during periods of disability caused by the act of a patient or inmate—the source of the unique hazard associated with the work—the state can more readily attract employees to and keep them in these essential but dangerous jobs.

This view of the legislative intent behind Act 534—that the legislature was addressing an issue completely different from that of the need to compensate workers in general who suffer disabling work-related injuries—supports the claimant's contention that the legislature did not intend that Act 534 benefits be withheld until a determination had been made on eligibility for workers' compensation.

Although the statute is less than clear on this point, our consideration of the legislature's language and of its apparent intent leads us to conclude that the legislature intended that DPW adjudicate Act 534 claims filed by its employees.

Apart from its jurisdictional argument, DPW contends that considerations of administrative efficiency justify the procedure prescribed in its manual. DPW argues that:

It is immediately evident that the eligibility requirements for Act 534 and Workmen's Compensation are related in such a way so that the awarding of Workmen's compensation is a necessary (but not sufficient) condition for the awarding of Act 534 benefits. Because denial of Workmen's compensation benefits is dispositive of the question of eligibility for Act 534 benefits, it would be a gross waste of public resources for the two determinations to proceed on independent paths as the Petitioner would have it done.

Brief for Respondent, p. 14.

However, the procedure outlined by DPW does not contemplate one proceeding but two, at least whenever workers' compensation entitlement exists. In those instances, DPW would have SWIF confirm eligibility for workers' compensation, and then DPW would have to determine if the work-related injury was caused by a patient. In *Schanz* this court expressly rejected the claimant's contention that his workers' compensation approval required approval of his Act 632 claim on the basis of res judicata, noting that the additional element that the injury was caused by an inmate remained to be proved. *Schanz*, 52 Pa. Commonwealth Ct. at 306-07, 415 A.2d at 981-82.

Finally, we note that Act 534 claims could be determined much more quickly if DPW adjudicated them at the outset, without awaiting the processing of any workers' compensation claim. DPW asserts that we may not consider the average length of time for processing a workers' compensation claim because no evidence on that point is in the record. We do not need such evi-

dence in order to conclude that a DPW adjudication that waits for the results of a workers' compensation proceeding happens more slowly than one that does not. Obviously, the assurances of continued receipt of full salary that Act 534 was intended to provide, *see Lightcap,* are more effective when the claim is determined quickly.

Apart from its jurisdictional and efficiency arguments, the only authority that DPW can cite in support of its procedures is section 7155 of its own Personnel Manual. However, in the absence of an expression from the legislature that DPW has the authority to make such a change, and in the absence of a properly promulgated regulation implementing such authority, the fact that DPW has written these procedures down in a manual is not legally conclusive.

Even if we were able to read the statute as allowing DPW to delegate its responsibility to adjudicate Act 534 claims—which we cannot do—DPW's manual would not, of itself, provide a sufficient basis for such delegation. Our Supreme Court has established that an agency must have a properly promulgated regulation before it may implement a rule or a policy having a substantive effect:

> Neither the legislatively chosen agency . . . nor the courts may imagine rules or standards for conduct not properly adopted and announced in advance.
>
> . . .The exercise of the Board's power on a case by case basis not based on statute or rule suffers from constitutional infirmities of vagueness.

*Pennsylvania State Board of Pharmacy v. Cohen,* 448 Pa. 189, 200-01, 292 A.2d 277, 282-83 (1972).

Although the rule at issue here is addressed to the procedure by which claimants apply for Act 534 benefits, it has a substantive effect because it delays the pro-

cessing of an Act 534 claim until after a workers' compensation determination is made, and may bar Act 534 benefits altogether if for some reason no workers' compensation proceeding takes place. Clearly, the rule is one of general application. This rule also falls within the definition of "regulation" in the Commonwealth Documents Law, section 102(12) of the Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §1102(12). Because DPW did not promulgate the rule in accordance with that law, the rule is of no effect. *See Newport Homes, Inc. v. Kassab,* 17 Pa. Commonwealth Ct. 317, 332 A.2d 568 (1975).

DPW's action in stopping full-salary payments to Ralph T. Hardiman constituted either a termination of Act 534 benefits that DPW was paying or a denial of a claim for such benefits pursuant to an invalid procedure. By either description, DPW made an adjudication of the claimant's rights without a hearing. Accordingly, we shall remand this matter to DPW with instructions to provide Hardiman with a hearing and then to adjudicate his claim for Act 534 benefits.

This court notes that no reason appears why DPW itself may not consult and coordinate with SWIF, just as any employer may consult with its insurance carrier and consequently agree to pay a claim for an injury on the job. However, because there is nothing in the law as we analyze it, or in DPW's procedures, requiring the employee himself to pursue a worker compensation claim as a preliminary, the court must remand to DPW, with a direction that DPW afford the claimant a hearing and properly adjudicate the claim.

## ORDER

Now, November 14, 1988, the appeal of Ralph T. Hardiman from the action of the Department of Public Welfare in stopping payments to him of full salary dur-

ing a period of disability without a hearing is sustained. We remand this matter to the Department of Public Welfare with instructions that the department hold a hearing on Hardiman's claim for eligibility for Act 534 benefits and then make a determination of that claim.

Jurisdiction relinquished.

Judge MACPHAIL did not participate in the decision in this case.