609 A.2d 899

**Charles T. WERTZ, Petitioner,**

v.

**DEPARTMENT OF CORRECTIONS, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 17, 1991.

Decided May 18, 1992.

James L. McAneny, for petitioner.

M. James Matthews, Asst. Counsel, for respondent.

Before DOYLE and McGINLEY, JJ., and SILVESTRI, Senior Judge.

DOYLE, Judge.

Charles T. Wertz appeals from an order of the Department of Corrections (Department) which terminated the disability benefits which he had been receiving pursuant to the Act of December 8, 1959, P.L. 1718, *as amended* (Act 632), 61 P.S. § 951.[1] Act 632 provides in pertinent part:

> Any employe of a State penal or correctional institution ... who is injured during the course of his employment by an act of any inmate ... shall be paid ... his full salary, until the disability arising therefrom no longer prevents his return as an employe of such department, board or institution

---

[1] By the Act of September 2, 1961, P.L. 1224 (Act 534), the legislature broadened the employees covered under the Act of December 8, 1959 (Act 632) to include certain employees of the Department of Public Welfare and of county boards of assistance. Thus, benefits under 61 P.S. § 951 may be either Act 632 benefits or Act 534 benefits depending on the status of the claimant. *Hardiman v. Department of Public Welfare, Woodville State Hospital*, 121 Pa.Cmwlth.Ct. 120, 125, n. 1, 550 A.2d 590, 592 n. 1 (1988).

at a salary equal to that earned by him at the time of his injury.

The relevant underlying facts are as follows: Wertz is employed by the Department at the State Correctional Institution at Camp Hill as principal of the school. On October 25, 1989, while Wertz was away at a conference, the inmates at the prison rioted. Wertz became aware of the riot that evening through news reports and telephone calls from co-workers.

The next day Wertz worked at his regular office in the prison and rioting again broke out that evening. On October 27, 1989, Wertz worked at the State Police Command Center in the prison Administration Building, which is outside the prison fence. On Sunday, October 29, 1989, Wertz reported to the prison with the rest of the male staff and spent the next few days searching cell blocks for weapons and contraband and removing the personal property of the inmates. During this period, Wertz went to his office in the prison school. He saw that the school building had been substantially destroyed and that his personal office had been completely burned out.

Thereafter, Wertz sought medical treatment and was diagnosed as suffering from post traumatic stress disorder. On November 20, 1989, Wertz became disabled from continuing his employment at the prison because of his post traumatic stress disorder and he began receiving benefits under Act 632. By letter dated January 22, 1990, Wertz was advised that his benefits would be terminated because the Department's Act 632 Review Committee determined he was ineligible to continue to receive benefits. Wertz appealed the termination.

On November 13, 1990, a hearing was held before a hearing examiner, at which time the parties stipulated that the job conditions at the prison were abnormal during the riots. Following the law developed in workmen's compensation psychic injury cases, the hearing examiner determined that Wertz was "suffering from post traumatic stress disorder as a direct result of the prison riots, and is disabled from his employment as a result thereof." The hearing examiner recommended that Wertz continue to receive Act 632 benefits until such time

as he is able to return to work. The hearing examiner's findings of fact, conclusions of law and recommendation were then submitted to the Commissioner of the Department of Corrections.

The Commissioner of Corrections adopted the hearing examiner's findings of fact but rejected the conclusions of law and recommendation.[2] Specifically, the Commissioner rejected the workmen's compensation standard for compensability applied by the hearing examiner; instead, he applied the standard for negligent infliction of emotional distress. He concluded that Wertz was not eligible for Act 632 benefits in the first place because he was not in the institution while the riots took place, and thus was not affected by a sensory and contemporaneous observance of the incident. Accordingly, the Commissioner issued an order terminating the Act 632 benefits. Appeal to this Court followed.

The sole issue raised by Wertz concerns the proper standard to be used in determining whether a psychic or mental injury is compensable under Act 632. However, that issue is raised within the context of the reason given by the Commissioner to terminate Wertz's benefits. In the case before us, the Department had already granted benefits to Wertz. The Department then later terminated them because it disputed the causal connection between Wertz's mental injury and the events occurring at the prison on October 25 and 26, 1989.

In an analogous workers' compensation case, *Beissel v. Workmen's Compensation Appeal Board (John Wanamaker, Inc.)*, 502 Pa. 178, 465 A.2d 969 (1983), the employer attempted to litigate causation in the context of a petition for termination of workmen's compensation benefits. In that case, the claimant was injured on May 16, 1975 during the course of her employment and, on July 6, 1976 filed a petition for workmen's compensation. In February 1977, the employer filed a notice of compensation payable. Two years later the employer filed

---

**2.** Act 632 does not establish which entity has the authority to adjudicate a claim made under that Act. However, in *Schanz v. Bureau of Corrections*, 52 Pa.Cmwlth.Ct. 300, 415 A.2d 978 (1980), this Court held that the Bureau of Corrections, now the Department of Corrections, has the power to adjudicate a claim under Act 632.

a petition for termination of compensation alleging that the claimant's present condition was unrelated to the 1975 injury. The referee entered an order terminating benefits. On appeal, the Workmen's Compensation Appeal Board and later this Court affirmed the referee's decision. However, the Supreme Court reversed and held:

> Since [the employer] had an opportunity to, and in fact did, investigate the cause of [the claimant's] disability, the notice of compensation payable it filed constitutes an admission of its liability to [the claimant] for compensation for a lower back injury. [The employer] may not now, under the guise of a termination petition, come into court and use the favorable testimony of Dr. Murray to contradict precisely that which it admitted in its notice of compensation payable, namely, that [the claimant's] disability at the time the notice of compensation payable ... was related to her 1975 fall at work.

*Id.,* 502 Pa. at 183, 465 A.2d at 971–72 (footnotes omitted).

 We conclude that, in principle, *Beissel* is controlling. The Department had the opportunity to investigate Wertz's claim prior to awarding him benefits but chose to forego an investigation. The Department, by granting benefits to Wertz, has conceded that Wertz met the causation requirements of Act 632 and may not now dispute this issue. If the Department desires to terminate Wertz's benefits it must prove, under Act 632, that his disability "no longer prevents his return as an employe of such department ... at a salary equal to that earned by him at the time of his injury."[3]

It is evident that the hearing examiner, the Commissioner and the parties did not understand the issue and consequently the order of the Commissioner was grounded on legal theory irrelevant to the essential issue. For this reason, we will reverse the order of the Commissioner and remand for the computation of back benefits and interest and the reinstatement of benefits. *Beissel.* The Department may, or course, file a termination petition and could prevail if it can show that

---

3. Because of our disposition of this issue, we do not decide the proper standard to be used in determining initial eligibility for Act 632 benefits.

Wertz's disability "no longer prevents his return as an employee of such department . . . at a salary equal to that earned by him at the time of his injury." *See* discussion *supra*.

To the extent that *Boughter v. Department of Public Welfare,* 55 Pa.Cmwlth.Ct. 521, 423 A.2d 806 (1980), relied on by Wertz is inconsistent with *Beissel,* it is obviously discredited by *Beissel* which is both later in time and a Supreme Court opinion. *Boughter,* however, is distinguishable as well. While the facts there did involve a claim under Act 534 for a mental disorder, it was a physical-mental injury relationship, not a mental-mental relationship as we have here. Moreover, the issue in *Boughter* was the causal relationship between the claimant's physical injury (a student of claimant had kicked a chair which struck claimant's knee) and his subsequent mental disorder. The Hearing and Appeals Unit of the Department of Public Welfare chose to credit the employer's[4] doctor rather than the claimant's psychiatrist and determined that the mental disorder was not causally related to the claimant's physical injury.[5]

█ Finally, Wertz has asked this Court to award costs and attorney's fees pursuant to the Act of December 13, 1982, P.L. 1127, 71 P.S. §§ 2031–2035 (Costs Act). Section 3 of the Costs Act, 71 P.S. § 2033, authorizes an award of fees and expenses to a "prevailing party,"[6] other than the Commonwealth, in an adversary adjudication initiated by that Commonwealth agency unless the adjudication officer finds that the agency's action was "substantially justified."[7] Further,

4. The employer in this case was the Youth Development Center where the claimant was a house parent.

5. To the extent that *Boughter* placed the burden of persuasion on the claimant in cases where existing Act 534 benefits were proposed to be terminated, *Boughter* was overruled by *Brewer v. Department of Public Welfare,* 63 Pa.Cmwlth.Ct. 107, 437 A.2d 793 (1981).

6. Section 2 of the Costs Act, 71 P.S. § 2032, defines "prevailing party" as follows: A party in whose favor an adjudication is rendered on the merits of the case or who prevails due to withdrawal or termination of charges by the Commonwealth Agency or who obtains a favorable settlement approved by the Commonwealth Agency initiating the case.

7. "Substantially justified" is defined in Section 2 of the Costs Act, 71 P.S. § 2032, as: The position of an agency as a party to a proceeding is

Section 3 establishes the procedure for the request of such fees and expenses. A party seeking an award of fees and expenses must submit an application for such award to the adjudication officer [8] within 30 days after the final disposition of the adversary action. The adjudication officer then makes a finding as to the amount of fees and expenses to be awarded. A party dissatisfied with the fee determination may petition this Court for leave to appeal that determination.

The question of the award of fees and costs is not properly before this Court. After the final disposition of the adversary action, if Wertz is a "prevailing party" and it is determined that the Department was not "substantially justified" in bringing the action, such fees may properly be awarded. However, Wertz must follow the procedures as set forth in Section 3. He must first submit an application for award of fees and expenses to the adjudication officer. If he is dissatisfied with the fee determination, he may then petition this Court for leave to appeal. Until Wertz has complied with the procedures set forth in the Costs Act, his claim for the award of fees and expenses is not ripe. *See Odhner v. Township of Woodward,* 143 Pa.Cmwlth.Ct. 450, 599 A.2d 276 (1991) (until landowner has pursued the remedies provided within the Municipalities Planning Code to invalidate a flood control ordinance, a compensation claim for the temporary taking of land affected by that ordinance is not ripe).

Based on the above discussion, we reverse the order of the Commissioner and remand for recalculation and restoration of benefits.

substantially justified when such position has a reasonable basis in law and fact. The failure of an agency to prevail in a proceeding, or the agreement of an agency to settle a controversy, shall not raise a presumption that the position of the agency was not substantially justified.

8. While the term "Adjudicative officer" is used throughout the text of the Costs Act, that term is not defined in the Act. However, the term "adjudication officer" is defined in Section 2 of the Costs Act, 71 P.S. § 2032, as: The deciding official, without regard to whether the official is designated as an administrative law judge, a hearing officer, examiner, referee or otherwise, who presided at the adversary adjudication.

## ORDER

NOW, May 18, 1992, the order of the Commissioner in the above-captioned matter is reversed and the case is remanded for proceedings consistent with this opinion.

Jurisdiction relinquished.

SILVESTRI, Senior Judge, concurring.

I agree with the facts and procedural aspects of the case as set forth by the majority and will not allude thereto further. Although I agree that the order of the Commission is in error, I would reverse the order and remand for further proceeding; further, I would not address the claim for attorney's fees and costs except to note that such claim is not properly before us.

Act 632 is clear, unequivocal and unambiguous and for its effective administration requires no analogy to The Workmen's Compensation Act and cases decided thereunder. Under Act 632 there is only one way to terminate benefits. The Act provides that when an employee is being paid his/her full salary as the result of an injury during the course of his employment by an act of any inmate, etc., payment of the full salary shall continue until the disability resulting from such injury no longer prevents his/her return at a salary equal to that earned at the time of the disabling injury. The propriety of the initial determination as to injury, disability and the payment of full salary is of no moment in the determination of whether the payments of full salary is to continue or be terminated. Further, since the language of Act 632 only authorizes discontinuance of salary payments under the conditions stated therein, there is no middle ground, i.e., either the full salary continues or is terminated.