**Robert L. KEITH, Jr.; Aldo D. Mirarchi; Edward A. Moffet; and Glenn W. Claudfelter, Petitioners,**

**v.**

**DEPARTMENT OF CORRECTIONS, Department of Labor and Industry and Phico Services Company, Respondents.**

Commonwealth Court of Pennsylvania.

Argued April 8, 1997.

Decided June 3, 1997.

Michael J. Wilson, Lemoyne, for petitioners.

R. Burke McLemore, Harrisburg, for respondent, PHICO Services Company.

Jonathan W. Kunkel, Assistant Counsel, Camp Hill, for respondent, Department of Corrections.

Before McGINLEY and LEADBETTER, JJ., and NARICK, Senior Judge.

McGINLEY, Judge.

Before this Court are the preliminary objections of the Department of Corrections (DOC), the Department of Labor and Industry (DL & I) and Phico Services Company (Phico) (collectively, Respondents) to the petition for review in the nature of individual and class action complaints for declaratory judgment, injunctive relief and damages (complaint) filed by Robert L. Keith, Jr. (Keith), Aldo D. Mirarchi (Mirarchi), Edward A. Moffet (Moffet), and Glenn W. Claudfelter (Claudfelter) (collectively, Petitioners).

On December 16, 1996, in this Court's original jurisdiction [1], Petitioners filed a complaint alleging the following:

14. On or about October and November, 1989, certain inmates at SCI–Camp Hill committed certain acts, which acts (hereinafter collectively referred to as the "Camp Hill Riots") resulted in mental and/or physical injuries to certain employees of DOC, SCI–Camp Hill.

. . . .

16. On or about August 14, 1995, certain inmates at SCI–Coal Township committed certain acts, which acts (hereinafter collectively referred to as the "Coal Township Riot") resulted in mental and/or physical injuries to certain employees of DOC, SCI–Coal Township.

17. During the Camp Hill Riots, Keith suffered mental and/or disabling physical injuries as a result of acts of inmates which included physical assault upon Keith and the unsuccessful attempt to murder Keith and others by setting fire to an institution building in which Keith and the others had been trapped by certain inmates.

18. During the Camp Hill Riots, Moffet suffered mental and/or injuries as a result of acts of inmates, which included the forced entrapment of Moffet and others within a kitchen/dining facility of SCI–Camp Hill and the active pursuit of Moffet while he was fleeing to the perimeter from said facility of said institution in the midst of one of said Riots in order to capture him and/or physically harm him.

19. During the Coal Township Riot, Mirarchi suffered mental and/or physical disabling injuries as a result of acts of inmates which included taking Mirarchi as a hostage in a cellblock during said Riot.

20. During the Coal Township Riot, Claudfelter suffered mental and/or physical disabling injuries as a result of acts of inmates which included the physical assault of Claudfelter.

21. On or about November 3, 1989, DOC determined that Keith had suffered said injuries as the result of the acts of inmates and such injuries were compensable.

22. On or about October 25, 1989, DOC determined that Moffet had suffered disabling injuries as the result of acts of inmates and such injuries were compensable pursuant to Act 632 [Act of December 8, 1959, P.L. 1718, *as amended*,] 61 P.S. § 951 [referred to as Act 632].

23. On or about August 15, 1995, DOC determined that Mirarchi has suffered disabling injuries as the result of the acts of inmates and such injuries were compensable pursuant to Act 632. . . .

24. On or about August 24, 1995, DOC determined that Claudfelter had suffered disabling injuries and such injuries were compensable pursuant to the Pennsylvania Workers' Compensation Act ("WCA"), 77 P.S. § 1, et seq.

. . . .

29. DOC, with full knowledge of and assistance of its agent PHICO, commenced paying Keith, Moffet, and Mirarchi each their respective full salaries, as benefits pursuant to Act 632. . . .

. . . .

33. To date, Claudfelter . . . is receiving . . . two-thirds his average weekly wage before injury, and receives no Act 632 full salary benefit.

. . . .

1. 42 Pa.C.S. § 761(a)(1) provides that "[t]he Commonwealth Court shall have original jurisdiction of all civil actions or proceedings . . . against the Commonwealth government, including any officer acting in his official capacity. . . . "

42. At the present time, the Petition to Suspend [filed by DOC] ... Act 632 benefits of Keith is pending disposition before [Workers' Compensation Judge] WCJ Elizabeth Crum.

43. On or about May 1, 1996, DOC ... filed a Petition to Compel Examination against Mirarchi with the Bureau and before WCJ Audrey Beach [which was granted]. ...

. . . .

47. On or about May 24, DOC gave written notice to Moffet that it was initiating proceedings to terminate his Act 632 benefits, specially scheduling an administrative hearing.

. . . .

58. On or about November 1, 1996, DOC gave Claudfelter notice that it was initiating proceedings to review denial of his request to receive Act 632 benefits for the injuries he sustained in the Coal Township Riot.

Complaint, December 16, 1996, Paragraphs 14, 16–24, 29, 33, 42–43, 47, and 58 at 3–6, and 8–10.[2]

Respondents filed preliminary objections to the complaint asserting that Petitioners have failed to exhaust administrative remedies and that there is an adequate remedy at law under both Act 632 and the WCA. Respondents seek a dismissal of Petitioners' complaint asserting that this Court lacks jurisdiction over the present subject matter.

■ Preliminary objections admit as true all facts which are well pleaded and all inferences which are reasonably deductible therefrom. *Pennsylvania Academy of Chiropractic Physicians v. Department of State, Bureau of Professional & Occupational Affairs*, 129 Pa.Cmwlth. 12, 564 A.2d 551

(1989). "In addition, in order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and, where any doubt exists as to whether the preliminary objections should be sustained, that doubt should be resolved by a refusal to sustain them." *Pennsylvania State Troopers Association v. Commonwealth of Pennsylvania*, 146 Pa.Cmwlth. 467, 606 A.2d 586, 587 (1992).

■ Initially, Respondents contend that this Court lacks jurisdiction because Petitioners have failed to exhaust their administrative remedies. Specifically, Respondents assert that pursuant to statutory and case law Petitioners' Act 632 benefits are also a collateral benefit of workers' compensation and therefore administrative proceedings under both acts are necessary before any benefits are modified, suspended or terminated.

Act 632 provides:

Any employe of a State penal or correctional institution under the Bureau of Correction of the Department of Correction of the Department of Justice and any employee of a State mental hospital or Youth Development Center under the Department of Public Welfare[3], who is injured during the course of employment by an act of an inmate or any person confined in such institution ... shall be paid by the Commonwealth of Pennsylvania, his full salary, until the disability arising therefrom no longer prevents his return as an employe of such department, board or institution at a salary equal to that earned by him at the time of his injury.

. . . .

During the time salary for such disability shall be paid by the Commonwealth of Pennsylvania any workmen's compensation

---

**2.** Petitioners seek the following relief: 1) at Count One-injunctive relief staying all current workers' compensation proceedings; 2) at Count Two-injunctive and declaratory relief to reinstate, commence and/or continue full salary and medical benefits under Act 632; 3) at Count Three-injunctive and declaratory relief seeking to reinstate and/or continue Claudfelter's employment and health care benefits; 4) at Count Four-an establishment of five classes of individuals with identical factual circumstances as Petitioners; 5) at Counts Five through Seven-injunctive and declaratory relief for those class members; 6) at Count Eight-injunctive and declaratory relief regarding the Modified Duty Policy of DOC; and 7) at Counts Nine and Ten reimbursement for unpaid medical expenses.

**3.** The Act of September 2, 1961, P.L. 1224 (Act 534) covers certain Department of Public Welfare employees and county boards of assistance who are injured by either patients or clients. Act 534 had its genesis in Act 632.

received or collected for such period shall be turned over to the Commonwealth and paid into the General Fund, and if such payment shall not be so made, the amount so due the Commonwealth shall be deducted from any salary then or thereafter becoming due and owing.

61 P.S. § 951.

Section 104 of the Workers' Compensation Act (WCA), 77 P.S. § 22 [4] defines "employe" as "[a]ll natural persons who perform services for another for a valuable consideration...." Section 301(c) of the WCA, 77 P.S. § 411 provides that "[t]he terms 'injury' and 'personal injury,' as used in this act, shall be construed to mean an injury to an employe ... arising in the course of employment and related thereto...."

This Court has consistently recognized that an employee injured by an inmate or a patient is entitled to workers' compensation benefits concurrent with Act 632/534 benefits. In *Hardiman v. Department of Public Welfare*, 121 Pa.Cmwlth. 120, 550 A.2d 590, 594 (1988) this Court stated that the "substantive differences between the two benefit programs (Act 632/534 "full salary" and workers' compensation two-thirds of the employee's wages) support to some extent the ... characterization of them as concurrent rather than having a primary and supplemental relationship." [5] Because Act 632 benefits are a collateral benefit, an employer has the following duties:

> Under the provisions of the compensation act, the employer and its workers' compensation carrier or adjuster must either accept or deny the claim within 21 days pursuant to the provisions of the law applicable to every Pennsylvania employer. The proper investigation and assessment of the claim must be undertaken. This is the first obligation.
>
> If the claim is accepted, and the act of the inmate is found to have been involved, the employer at the same time usually undertakes its next obligation, and acknowledges liability for continuing salary at the gross level amount, and the Notice of Compensation Payable is usually prepared to read that the employee is receiving full salary in lieu of compensation.
>
> Because two separate obligations exist, however problems have historically arisen in less straightforward cases with regard to how the similar, yet very different benefits are to be granted and received and administered. The leading case of Hardiman ... however has established this dual-obligation rule, and has held in this connection that: (a) a finding of compensability under workers' compensation is not necessarily a prerequisite to a cognizable claim under Act 632/534; and (b) Act 632/534 benefits are not to be ended without a due process hearing-separate and distinct from the workers' compensation proceeding .... (footnotes omitted).

David B. Torrey and Andrew E. Greenberg, Pennsylvania Workers' Compensation: Law and Practice § 17:5 (1996).

 Therefore, if full salary payments are paid under Act 632, a claimant must be afforded a hearing before there is a termination or denial of benefits. *See Hardiman.* Even if DOC is successful in terminating Petitioners' Act 632 benefits, DOC may still be obligated for workers' compensation.

However, Petitioners assert that Respondents cannot institute workers' compensation proceedings where they are receiving Act 632 salary payments. In *Polk Center v. Workmen's Compensation Appeal Board (Pochran)*, 682 A.2d 889 (Pa.Cmwlth.1996) Rosemarie Pochran (Pochran), an employee of the Polk Center/Department of Public Welfare (Polk Center) suffered a work-related injury when she was kicked in the right leg by a patient. Polk Center filed a suspension peti-

---

4. Act of June 2, 1915, P.L. 736, *as amended.*

5. In *Hardiman* we noted:
 Although there is nothing in the legislative history to guide us, we may conclude from the nature of the institutions covered by Act 534 (state mental hospitals and youth development centers) as well as from the nature of the institutions originally covered under Act 632 (state penal and correctional institution) that the reason for providing such assurance was that the legislature regarded working in those places as being more dangerous than most other forms of state employment.
 *Id.* at 595.

tion alleging that Pochran refused to accept work within her physical limitations. The WCJ granted the petition and suspended benefits. The Board reversed, concluding that the WCJ lacked jurisdiction because Pochran was receiving Act 534 benefits at the time the positions were offered.

On appeal to this Court we addressed the issue of whether a WCJ had jurisdiction to decide a suspension petition where a claimant was receiving full salary payments under Act 534. In *Polk* this Court stated:

Although sharing a similar purpose, the two acts [WCA and Act 534] operate separately from one another, requiring independent action, after a full due process hearing by the respective governmental bodies which have been delegated to adjudicate such claims, before benefits under either act may be terminated. While in practice, employers may ordinarily attempt to terminate benefits under Act 534 first, since benefits are greater than those which are owed under the WCA, *neither statute prevents employers from initiating proceedings under the WCA before, after, or simultaneously with, proceedings under Act 534.*

If it were not possible to seek a suspension under the WCA prior to a determination under Act 534, the due process rights of both employers and their insurance companies could possibly be violated. Due to the subtle differences between the two acts, it is at least possible that a claimant would continue to be entitled to benefits under Act 534 while at the same time the employer would be entitled to a suspension or termination of benefits under the WCA. However, if a termination of benefits under Act 534 was a prerequisite to a suspension or termination of benefits under the WCA, an employer's insurance carrier would be precluded from obtaining relief under the WCA because such insurance carriers have

no standing to bring an action under Act 534 to terminate benefits. Under that scenario, they would be forced to continue paying workers' compensation benefits indefinitely, with no right to a hearing, a situation fraught with constitutional infirmities.

Our decision in this case is further supported by the opinion of this Court in *Wisniewski v. Workmen's Compensation Appeal Board (City of Pittsburgh)*, 153 Pa.Cmwlth. 403, 621 A.2d 1111 (1993). In Wisniewski, we said that an employer could not terminate benefits under the Heart and Lung Act[6] through a hearing before a WCJ and was required to terminate those benefits through a separate proceeding before the municipality. Significantly, while finding that a municipality could not terminate an employee's heart and lung benefits based upon a WCJ's decision under the WCA, *we nonetheless upheld the power of a WCJ to terminate benefits under the WCA even where the claimant continued to receive, or be entitled to, heart and lung benefits. Id.* By analogy, we believe this same principle applies where a claimant is receiving benefits under Act 534. *See Mihok [v. Department of Public Welfare*, 135 Pa.Cmwlth. 265,] 580 A.2d [905] at 907 [1991 ] ('This Court has recognized the similarities between Act 534 and the Heart and Lung Act and the appropriateness of adopting analyses of one for construction of the other.'). (emphasis in original).

*Id.* at 894–95.

■ Like the factual situation in *Polk*, DOC and DL & I can institute workers' compensation proceedings even where Petitioners are receiving full salary payments under Act 632. Here, each Petitioner is receiving benefits under Act 632 or the WCA and as of this time these respective administrative proceedings are ongoing.[7] Once a

---

6. Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. § 637. Section 1 of the Act provides that certain types of employees, such as police officers, shall receive their full rate of salary if they are temporarily disabled from a work-related injury.

7. DOC has the authority to adjudicate claims under Act 632. *See Wertz v. Department of Corrections*, 148 Pa.Cmwlth. 133, 609 A.2d 899, 900 n. 2 (1992). If DOC petitions for termination of Act 632 benefits, a hearing before the hearing examiner shall take place. The hearing examiner's decision can be appealed to the Commissioner of Corrections and then to this Court.

final decision has been rendered Petitioners can appeal and this Court will have appellate jurisdiction over the issues. Because there exists a legally adequate administrative remedy, Respondents preliminary objections are sustained and the complaint is dismissed.

### ORDER

AND NOW, this 3rd day of April, 1997, the preliminary objections of the Department of Corrections, the Department of Labor and Industry and Phico Insurance Company are sustained and Petitioners' petition for review in the nature of individual and class action complaints for declaratory judgment, injunctive relief and damages at law is dismissed.